GODFREY RUDOLPHE, Captain of Ship Blanche, *v.* THE CITY OF NEW
ORLEANS.

Action to recover damages from defendant for alleged illegal conduct of the Board of Health, in
ordering the ship to Fort Jackson, after her arrival in the city. *By the Court:* We think that the
fault lies with the captain of the ship in proceeding to the city without first having been visited by
a health officer, and that he thereby took upon himself the risk of being compelled to return to
Fort Jackson, particularly as the cholera had so recently shown itself on his ship, and there was
a case of ship fever among the emigrants.
It will not be presumed on slight testimony that sworn officers have violated their duty in matters
of discretion confided to them. Those who allege an illegal exercise of that discretion should be
held to establish such allegation by conclusive proof.

APPEAL from the Sixth District Court of New Orleans, *Cotton*, J.
    *Goold & Stansbury*, for plaintiff.  *Livingston*, City Attorney, for appel-
lant.

MERRICK, C. J.  This suit is brought to recover the sum of five thousand
dollars damages, alleged to have been occasioned by the illegal order of the
Board of Health of the city in ordering the British ship Blanche to return with
its freight and passengers from Slaughter House Point, near the city, to Fort
Jackson, before being permitted to land at the city.

It appears that the ship had a very large number of emigrants on board;
that nine had died, five of cholera, as was supposed, one after having crossed
the bar at the mouth of the Mississippi, and that there were two sick persons
on board, one with the ship fever.

The ship arrived at the South-West Pass the 18th of November, 1853, and
proceeded up the river to Fort Jackson, where she lay twenty-four hours, and no
health officer making his appearance, came up to Slaughter House Point.  *Dr.
Hester*, the boarding physician, with a secretary, *Mr. Beecher*, boarded the ship,
and finding that five deaths of cholera were reported on the log, and that the
vessel was in a filthy condition, communicated the facts to the Board of Health,
and the following order was made, to wit:

    "*Resolved*, That *Capt. Rudolphe*, of the ship Blanche, be notified that under
no pretext whatever will the said vessel, or her passengers, be allowed to land
at any points within the limits of the city, but that he be ordered to return
with his ship and passengers to either Fort St. Phillip or Jackson and fumigate
the vessel, and on proper representations from the officers of this Board, at the
Quarantine grounds, at the above named Fort, he will be allowed to proceed to
this city."

In pursuance of this order the captain proceeded with the ship to Fort Jack-
son, and twelve or fifteen days were lost by this order before the ship com-
menced unloading.

The Judge of the District Court gave judgment in favor of the plaintiff for
$1023, cost of towage and hands, and the defendant appealed.  The plaintiff
has not presented us with any written or oral argument.*  But the charge con-
tained in the petition is that the acts, above mentioned, of the Board of Health,

---

* The Reporter has been requested by the Chief Justice to state that after the opinion had been
prepared in this case, a brief was filed by plaintiff's counsel.  It failed to change the conclusions to
which the court arrived, and the decision, as prepared, remained unchanged.  Through inadvertence
the above expression was suffered to remain.  Justice to plaintiff's counsel requires that this explan-
ation should accompany the report of the case.

in relation to the ship Blanche were "oppressive, illegal and unnecessary."    RUDOLPHE
Plaintiff alleges "that the Board of Health was organized by an ordinance of    *v.*
the City Council of New Orleans; that the Mayor of said city was the Presi-    NEW ORLEANS.
dent of said Board, and that to the Board of Health was delegated the super-
vision of vessels arriving at the said city, and other sanitary matters, and that
the Mayor, Aldermen and inhabitants are responsible for the acts of said Board
of Health."

It does not appear that any effort was used by the officers of the ship to pro-
cure the attendance of a health officer whilst the ship was lying at Fort Jack-
son, either by a communication on shore or with the agent of the ship at this
city. It is proven that the ship lay at Fort Jackson twenty-four hours, and
not having been boarded by a health officer, she was towed up to Slaughter
House Point.

We think that the fault lies with the captain of the ship in proceeding to the
city without first having been visited by a health officer, and that he thereby
took upon himself the risk of being compelled to return to Fort Jackson, par-
ticularly as the cholera had so recently shown itself on his ship, and there was
a case of ship fever among the emigrants.   *Dr. Hester*, the boarding physician,
had the reputation of being an able physician, and he was under the apprehen-
sion that one of the cases of sickness on board would terminate in cholera.
He was acting officially, and we do not think the uncertain testimony of two
or three inexperienced men should be sufficient to invalidate his official acts.
We have repeatedly said that we will not presume upon slight testimony that
sworn officers have violated their duty in matters of discretion confided to
them, and that those who allege an illegal exercise of that discretion should
be held to establish such allegation by conclusive proof.   *Dubose* v. *Levee Com-
missioners of Carroll*, 11 An. 165; ——— v. *Police Jury of West Baton
Rouge*, ibid.

Although it is shown that there was considerable excitement in the city,
arising from the arrival of this ship with sickness on board, we see nothing to
induce us to suppose that the order of the Board of Health, in reference to the
Blanche, was not justified by the facts, and that they did not, as prudent guar-
dians of the health, and having also in view the rights of the emigrants and
the owners of the ship, exercise wisely the discretion vested in them by the
ordinances of the city of New Orleans.

This view of the case renders it unnecessary to examine the question whether
the city can be rendered responsible for the illegal acts of the Board of Health.

It is, therefore, ordered, adjudged and decreed by the court, that the judg-
ment of the lower court be avoided and reversed, and that there be judgment
against the demand of the plaintiff, and in favor of the defendant, and that the
plaintiff pay the costs of both courts.