# COUNTY OF LINCOLN.

### WILLIAM MITCHELL *versus* CITY OF ROCKLAND.

Corporations, as a general rule, are not responsible for the unauthorized or unlawful acts of its officers.

Health officers are not authorized to take vessels, in quarantine, into their own possession and control, to the exclusion of the owner, or those whom he has put in charge.

And where such unauthorized and exclusive possession and control are taken by health officers or their servants, the town is not responsible for their acts.

The acts and declarations of an alderman, not representing the city government or the board of health, and not acting in behalf of either, are not legal evidence to affect the rights or liabilities of the corporation.

The original legal signification of *quarantine,* was the term of forty days, during which persons who came from foreign ports with the plague were not permitted to go on shore; but the signification of the term has been enlarged and modified by the statute, so as to represent the restriction against vessels having on board other contagious diseases than that of the plague.

ON EXCEPTIONS from *Nisi Prius,* APPLETON, J., presiding.

This was an action of the case to recover for damage sustained by the plaintiff by the partial destruction of his vessel, the Caroline, and her cargo, by fire, occasioned by the act of the health officers of Rockland, while they were officially in charge of said vessel, there being a case of small pox on board.    The verdict was for the plaintiff.

The defendants requested the Court to instruct the jury, that if the board of health of the city of Rockland, or any member thereof, or any other officer of the city, or employee of such officer, performed any acts in relation to the schooner Caroline and the case of small pox on board of her, not warranted by law, so that the acts of such officers, or officer, or employee, exceeded their or his legal authority, the city would not be liable in this action for such acts or doings, or the consequences thereof.    Also, that if the health committee, or any person acting in behalf of such committee, pursued, in relation to said vessel, the authority conferred upon them by

statute touching vessels arriving in ports of this State with a malignant disease on board, and their action was in accordance with the duties conferred upon them and required of them by the statute, the city in its corporate capacity, would not be responsible in damages for any injury which the plaintiff may have suffered in consequence of the want of ordinary care upon the part of such committee, or any agent employed by them.

The Court declined to give these instructions, and instructed the jury, " that if the health officers of the defendant city, as such, took the possession and control of the plaintiff's vessel, and, having such possession, a fire, by which the plaintiff's vessel was injured, was occasioned by the want of ordinary and common care of such officers of the town, or their servants, the defendant town would be liable for losses thereby occasioned."

To the above instructions, and refusal to instruct, the defendants excepted.

*A. P. Gould* and *J. O. Robinson*, for plaintiff.

1. The health officers of the defendant city had competent authority, by the nature of the duties and functions of their office, to act upon the general subject matter; and if they did not act *wilfully* or *maliciously*, and with a *design* to do the plaintiff a wrong, but did act with an honest view to obtain for the public some advantage or benefit, the city, in its corporate capacity, is liable to make good the damages sustained by the plaintiff, even though the health officers, to some extent, exceeded their legal authority. *Thayer* v. *City of Boston*, 19 Pick. 511; R. S., c. 21, § § 20, 26; 1 Salk., 289; 2 Salk., 441; 3 Camp. 403.

The acts done by the health officers were not wholly extra official, for they had a general authority over the vessel while she lay in the harbor, and if any portion of their acts were unauthorized, it was excess of authority merely.

It will not be denied, that all that was done, was done in good faith, and with the design of promoting the public benefit. The only complaint is, that through ignorance they erred,

and that they were careless and negligent in performing their duty. It is usual for the health officer to go on board, and direct what shall be done to the vessel before she shall be allowed to go up to the town; but not usual for him to do it himself. The most that can be said is, that the agents of the defendants performed their duty, in part, in an improper manner, by improper acts, not acts unsuitable to be done, but improper for them to do, without consulting the owner, and giving him an opportunity to employ some suitable person to see that it was done with safety to the vessel.

The authorities are abundant to sustain the doctrine of *Thayer* v. *Boston.*

The case of *Bush* v. *Steinman,* 1 Bos. & Pul. 404, was this:—The defendant contracted with a surveyor to put his house in repair for a stipulated sum; the surveyor contracted with a carpenter to do the whole business; the carpenter contracted with a bricklayer to do the brick work, whose servant left a quantity of casks of lime in the highway near the defendant's premises, having been employed to haul and leave them upon the premises. The plaintiff's carriage ran against the lime and was upset, and the defendant was held liable for the injury.

The case of *Littledale* v. *Lord Lansdale,* 2 H. Blackstone, 267, 299, is in point. The servants of Lansdale, who were employed generally in operating his coal mine, put a quantity of coals, without special instructions from Lansdale, upon Littledale's premises, and it was held, though an excess of authority, that Lord Lansdale was liable for the injury. See also *Horn* v. *Nichols,* 1 Salk. 289, and *Jones* v. *Hart,* 2 Salk. 441; 3 Campb. 403.

The distinction running through all the cases is this; that where the agent does an act wholly extra official, an act not within the general purview or scope of his authority, the principal is not holden. But if the agent has authority to act upon the general subject matter, his act, however indiscreet and negligent, is the act of the principal, and the principal is bound to repair all injuries to third persons, resulting from the negligence or misconduct of the agent.

If an agent, chosen for a special purpose, and invested with special and limited authority, exceeds that authority, the principal is not bound.

Health officers are invested with a general agency to act for the city, upon all matters relating to the public health. And with reference to vessels having contagious diseases on board, whatever acts they perform relating to such vessels, in good faith, and with the design of promoting the public health, are the acts of the city, whether they invade the rights of third persons or not.

The case of *Anthony* v. *Inhabitants of Adams*, 1 Met. 284, is not opposed to the doctrine of *Thayer* v. *Boston*. There the act done by the officer of the town from which the injury resulted, was altogether separate from, and independent of, the work which it was their duty to perform.

2. The city has *ratified* the acts of the health officers, by paying them and their servant for this *specific service*. Even if there was an excess of authority, the city has thus adopted their acts and made them their own.

3. The city is responsible for all damage, resulting to the plaintiff from the *negligence*, or want of ordinary care of their agents. 1 Metc. 284, 285.

4. But the verdict ought, in no event to be set aside; because the jury have found, that the loss was occasioned by the want of ordinary care in the officers of the city. Whether they had a right to take the exclusive control or not, they were bound to exercise *ordinary* care in all their acts; and this they have not done, even in performing those acts which are admitted to be within the scope of their legitimate authority; and "where the jury have found facts decisive of the case, in favor of the party prevailing, a new trial will not be granted, though erroneous instructions may have been given on a distinct point in the case." *Jewett* v. *Lincoln*, 14 Maine, 116; *Farrar* v. *Merrill*, 1 Greenl. 17; *French* v. *Stanley*, 21 Maine, 512; *Howard* v. *Minor*, 20 Maine, 325.

*Thacher*, for defendants.

1. The verdict and the special findings of the jury were

not authorized by the evidence. R. S., c. 21, § § 18, 19, 20, 21, 24, 26.

2. Under the finding of the jury the action cannot be maintained. The city cannot be bound by the acts of the health committee unauthorized by law. R. S., c. 21, § 18 *et seq. et ante;* Angell & Ames on Corp., p. 250, § 311, and cases cited in note to p. 330; *Thayer* v. *Boston,* 19 Pick. 513, and cases there cited by defendant's counsel; *Mayor of Albany* v. *Canliff,* 2 Comstock, 105.

3. Here was no precedent authority and no subsequent ratification.

4. Even a ratification cannot make the corporation liable for an act of its agent, which the corporation had no power to authorize. *Boam* v. *City of Utica,* 2 Barb. (S. C. R.) 104; *Hodges* v. *City of Buffalo,* 2 Denio, 110.

5. The second desired instruction ought to have been given. The city is not legally responsible for the acts of the health committee done in obedience to the requirements of law, *bona fide,* though there was a lack of due care upon the part of the committee or their servants.

TENNEY, C. J. — It is not in controversy, that the Caroline, owned by the plaintiff, came into the port of Rockland at the time alleged in the writ, having on board a man sick with the small pox, a malignant disease, of which he died a few days afterwards; that subsequently to the death and the removal of the body from the vessel, the person, who had some agency on board, connected with the sickness of the person deceased, under the health officers of the city, kindled a fire in a kettle, which he placed on a flat stone, lying upon the cabin floor, and caused to be burned in the kettle, brimstone, pieces of leather and old rope, for the purpose of fumigating the vessel and preventing the spread of the disease; that very soon after the fire in the kettle was kindled, the vessel was found to be on fire, and material injury was done thereto. From what source the fire communicated with the vessel, was a question for the jury.

Mitchell *v.* Rockland.

The jury were instructed, that if the health officers of the city of Rockland, as such, took possession and control of the vessel, and having such possession, a fire by which the vessel was injured, was occasioned by the want of ordinary care of such officers of the city or their servants, the city would be liable for losses thereby occasioned. And it was found by the jury, in addition to the general verdict for the plaintiff, that the officers of the city of Rockland did take the exclusive control and possession of the Caroline, and that the injury to the vessel was occasioned by the neglect of the officers of the city or their servants.

It does not appear that any evidence was introduced, tending to show that the city, as such, authorized the acts complained of by the plaintiff, or that they were done in pursuance of any general authority from the city to act therefor; or that the acts were expressly ratified by the corporation. But it is insisted in argument, that the allowance and payment of the bill of the person who kindled the fire in the kettle, and who had had the charge of the sick man on board the vessel, which was in testimony, was a subsequent ratification of the acts of the health officers.

But the statute is invoked as authority to the health officers, for their acts, which it is insisted by the plaintiff's counsel, renders the city responsible.

It is a general rule, that the corporation is not responsible for acts of its officers, which are unauthorized or unlawful. *Thayer* v. *Boston,* 19 Pick. 511.

The statute relied upon by the plaintiff provides, that whenever the selectmen of any seaport town within this State, shall be of the opinion that the safety of the inhabitants thereof requires that any vessel, which shall arrive there from any port or place, should perform quarantine, they may cause such vessel to do so, at such place, and under such regulations as they may judge expedient. And any owner, master, supercargo, officer, seaman, passenger, consignee, or other person, who shall neglect or refuse to obey the orders or regulations of the selectmen, respecting said

quarantine shall incur a penalty in money, or suffer imprisonment, or both. And a health committee, or a health officer, legally chosen, may perform all the duties, and exercise all the authority, which selectmen may perform or exercise, in requiring vessels to perform quarantine, under the provisions of the statute referred to. R. S., c. 21, § § 20, 21 and 22.

The general definition of the word *quarantine*, in law, is the term of forty days, during which persons coming from foreign ports, with the plague, are not permitted to land or come on shore. 5 Jac. Law Dict. 362. The word has been enlarged and modified in its signification by statutes. The restriction against the coming on shore of persons on board of vessels, arriving in port, is applied to vessels having on board other contagious sickness than that of the plague. But no authority has been found, which allows health officers, by virtue of their power, to cause quarantine to be performed, *ex vi termini*, to take the vessel in which such contagious disease is found, into their own possession and control, to the exclusion of the owner, or those whom he has put in charge.

The language of the statute requires, that the vessel shall perform quarantine, in the cases prescribed, and all having connection with the vessel, as owner, master, &c., are required to comply with the regulations of the selectmen or health officers. This clearly implies, at least, that the owner, and those having possession and control of a vessel under him, shall not be divested of this control and possession by those municipal officers. The statute relied upon by the plaintiff, having given no such authority to the health officers of the city of Rockland, (even if they had taken the steps required by the statute to cause the vessel to perform quarantine,) to take the exclusive control and possession of the Caroline, the city cannot by the statute alone be held responsible for their acts.

The testimony relied upon by the plaintiff, to prove a ratification by the city of the acts of the health officers, which were not authorized by the statute, does not appear from the case to have been passed upon by the jury. It was a ques-

tion for their exclusive determination. The right of the plaintiff to recover was made to depend, by the instructions to the jury, upon the facts, that the health officers of the city took possession and control of the plaintiff's vessel; and, while in such possession, a fire caused an injury thereto through the want of ordinary and common care of those officers, or their servants. These instructions, unqualified as they were, are regarded as erroneous.

The conversation between the witness Mansfield and Alderman Wiggin, while the vessel had on board the man sick with the small pox, being received against the objection of the defendants, we think was also erroneous. Wiggin was not one of the board of health of the city of Rockland. He was an alderman only. He did not represent the board of health or the city government, and the corporation could not be legally affected *by his* declarations or acts, when he was not acting in behalf of either. *Exceptions sustained—*
*Verdict set aside, and New trial granted.*

HATHAWAY, APPLETON, CUTTING, and MAY, J. J., concurred.