WILLIAM MITCHELL *versus* CITY OF ROCKLAND.

Neither a town nor its officers have any right to appropriate or interfere with private property, except so far as that right is conferred by statute.

Where a vessel is subject to quarantine regulations, the officers of the town are not authorized to appropriate *any part thereof* for a hospital, or to exclude the owner from the possession or control of any part of the vessel.

The Legislature intended to subject vessels to quarantine regulations only — not to require their seizure and conversion into hospitals.

THE trial of this action, which was granted by this Court, [see *Mitchell* v. *Rockland*, 41 Maine, 363,] was had before RICE, J., presiding at *Nisi Prius*.  The verdict was for plaintiff.  The case is now presented on motion to set aside the verdict as being against law, and also on EXCEPTIONS to various instructions given to the jury.

This action is to recover for injury sustained by plaintiff from the partial destruction of his vessel and cargo by fire, through the alleged carelessness of the board of health of the city of Rockland.

One of the instructions which the presiding Judge was requested to give the jury was, " that the authorities of the city, or the board of health, had no legal right to take the absolute,

possession or control of the vessel or the cabin thereof, to use as a hospital or otherwise, and, if they did, the city would not be liable for such act or its consequences."

This was given with this qualification, that "they might lawfully take possession or control of the cabin, so far as was necessary for the relief of the sick man, if he could not be removed without imminent danger."

" That the health committee, in case there was no hospital in the city, or in case the condition of the man, who was infected with the small pox, on board the schooner, did not admit his removal without imminent danger, to appropriate such portion of the vessel, for the accommodation of the infected person, as they should deem necessary for his relief, and to subject the portion of the vessel, thus appropriated, to the same regulations as they would be authorized to apply to hospitals."

The several questions presented by the case were fully argued by the counsel of the parties, but, as only one of them is considered in the opinion of the Court, further notice of the others is omitted.

*Thacher,* for defendants, in support of the exceptions, argued:—

That the doings of the persons who assumed to act as a health committee were unauthorized by law, and the corporation is not liable for the consequences. The law regulating quarantine was not observed. R. S. of 1841, c. 21, § § 20, 24; *Mitchell* v. *Rockland,* 41 Maine, 363, and cases there cited by defendants' counsel.

The health officers had no legal right to take possession, and make a hospital, of the cabin of the vessel. The instruction requested should have been given without qualification. R. S., c. 21, § 32.

*A. P. Gould, contra.*

1. When this case was before the Court, upon a former occasion, the rights, duties and liabilities of the parties were

made to depend wholly upon the laws of quarantine. The duties of the health committee, in relation to the care of the sick and infected, and the prevention of the spread of contagious diseases, when such diseases break out in a town or city, are now also to be considered.

For the duties of health officers in this State, both in relation to vessels and buildings on land, we are to look to our statutes; and, in relation to vessels, we contend that a larger power is conferred upon them than would be implied from the use of the term "quarantine," as found in the Law Dictionaries. All the duties prescribed for the preservation of the public health are found in the statute. The object of the statute, is as much to secure the performance of the offices of humanity towards those who may fall into distress, in boats and vessels, within the limits and jurisdiction of the town, as those in dwellinghouses. There exists the same necessity for the preservation of human life, and the protection of the public health, in the one case, as in the other. R. S., c. 21, § § 1, 15, 16, 17, 18, 20, 26, 32, 37.

Section 1 provides that, when any person coming from abroad, &c., shall be infected with any disease dangerous to the public health, the committee shall provide for the safety of the inhabitants in the manner they shall judge best, by removing such person, if it can be done without danger to his health, and by providing nurses, and other assistance and necessaries.

Section 15 makes it their duty to remove all filth of any kind, which shall be found in any place within the limits of their town, which in their judgment may endanger the lives or health of the inhabitants.

Section 16 authorizes them to remove or discontinue any cause of sickness which may be found upon private property within the town. By section 17, all persons on board of vessels, where any infection may then be, are submitted to the jurisdiction of the health committee. By sections 18 and 20, vessels arriving at any port within the State are requir-

ed to anchor at a convenient place below the town, of such port, and there to perform quarantine, under the direction of the health committee.

It will be observed that the duties imposed on health officers, in these two sections, (18 and 20,) are not required to be exercised within the limits of the town. Their quarantine duties and jurisdiction attach when a vessel arrives at the port. There is another class of duties to be performed within the limits of the town.

Section 32 requires the health committee to provide for a "place of reception for the infected, such as they judge best for the accommodation of the sick, and the safety of the inhabitants, whenever the small pox, or any disease dangerous to the public health, shall break out in any town;" and, if the condition of the infected person be such as not to admit of removal, without imminent danger, the house or "place where the sick person is found shall be considered as a hospital for every purpose before mentioned;" and all persons residing in, or "in any way connected with such place," are subjected to the regulations of the health committee. The Caroline was within the city of Rockland; and the small pox "broke out" within its limits. Dr. Robinson testifies that the sick person could not be removed without imminent danger to his life. The man was without medicine, nursing or any of the necessities of one in his situation. Must he be left there to die, simply because he happens to be on board of a vessel a few rods from the shore? The humanity of the law forbids it. He is found in a "place," and cannot be removed. That "place," therefore, becomes a "hospital for every purpose, subject to the regulations" of the health committee. One power which they have, indeed a duty imposed, undoubtedly is, when they have thus providentially been obliged to use a place for the care of the sick of an infectious disease, to cleanse it; and to take such measures for this purpose as they shall judge the safety of the public demands.

Section 33 requires the health committee, "whenever any disease dangerous to the public health shall be found to exist

in any town, to use all possible care to prevent the spreading of the infection."

Under sections 1, 15, 16 and 33, they might purify a "place" where a man had recently died of small pox, before permitting persons to go in there, who might otherwise contract the disease and spread it, without resorting to the provisions of the 18th, 20th, 24th, 25th, and 32d sections, if that were necessary.

But the powers conferred in section 32 may be regarded, not as applying to a distinct class of cases, but as an adjunct of the quarantine power, to be exercised upon the subjects of quarantine, when found within the limits of the town. No restriction to any particular class of cases, such as those on land, is suggested in the statute, but the provision is general and peremptory in its terms, covering all cases where the condition of the sick person will not admit of his removal.

But the health committee have power, also, over the persons of those on board of vessels performing quarantine. Sections 24 and 25. They may "there be detained by force, if necessary, until discharged."

Let us then suppose that a vessel is performing quarantine within the limits of a town, where the persons on board are detained by force, and one of them is so violently seized with small pox as to render his removal impossible. No person can go on board to care for him without the permission of the committee. May they not send him aid, a nurse and medicine? And may they not make his place of confinement comfortable, warm it, and keep it clean? And, after his death, if it is necessary for the health of those still confined on board, or others to whom the committee may permit intercourse with the vessel, may they not cause the place where the man died to be cleansed? The fact that the vessel is private property does not prevent, for we all hold our property in subserviency to the public interest; and the statute expressly gives authority, in this case, to appropriate private property to public uses, and to remove from it "all cause of disease." Sections 15, 16. There is no occasion in this case to

inquire whether the committee would have authority to detain a vessel for the express purpose of making a pest-house of her. This vessel was detained within the town by an authority that is not questioned. She was performing quarantine and was not detained as a hospital. It appears that she was voluntarily submitted to the charge of the health officers. The only question here is, being thus, and remaining thus, lawfully within their jurisdiction, and a person on board becoming so violently sick of an infectious disease, that he could not be removed from the place where they found him, are they not authorized to treat such place as a hospital for him? Fumigation is the common mode resorted to, to purify infected places, and it is generally adopted by health officers in cases of infected vessels, before they are permitted to go up to the town. This fact appears by the testimony in the case. Something of this kind would seem to be necessary to prevent the spread of the contagion, which it is their duty " in every possible way" to do.

Webster, in his Quarto Dictionary, says, that quarantine applies to persons as well as vessels. " The passengers and crew perform quarantine." And this, by our statute, is to be done " at such place, and under such regulations," as the committee shall "judge expedient." So that, upon any view of the case, it would seem that the health committee had power, finding this man so sick in a place within their town that he could not be removed, to provide for him, and to cleanse his place of confinement after he was dead.

The health officers did not take control of the vessel, but only such a place in it as was necessary for the care of the sick man. The presiding Judge instructed the jury that the defendants would have the right to appropriate such portion of the vessel only, to the accommodation of the infected, as they should find necessary for his relief, and to subject that part of it to the regulations of a hospital. All that was decided in the former opinion, in this case, was that the owner could not be divested of the control and possession of the vessel, as such, against his will. And this decision was made

solely upon the quarantine sections of the statute. The former trial, the ruling of the Judge presiding, and the arguments of the counsel, having presented that phase of the case only, there was no other question for the Court to decide. The facts, the rulings and findings of the jury at the last trial, present other and further questions.

2. But if the Court shall come to the conclusion that the committee exceeded their authority, I again most respectfully, but confidently, press upon the consideration of the Court my position upon the former occasion, that it was simply an excess of authority; and that, having authority by the nature of the duties and functions of their office as health officers, upon the general subject matter, and their acts being within the general purview of their authority, if they did not act maliciously, but carelessly merely, the city is liable. The very case referred to by this Court, for the rule that if the agent exceeds his authority the principal is not liable, contains the exception also, more strongly stated than is necessary to this case, as the facts are now presented. And the Court there made the exception the rule of their action. *Thayer* v. *Boston*, 19 Pick. 511.

I cannot employ argument more forcible or more pertinent to the facts in this case, than to adopt the language of the Court in that case, on pages 515 and 516.

3. There was no occasion to prove that the acts of the health committee were the acts of the city, for this is distinctly alleged in the writ, and admitted in the specifications of defence. Under the pleadings, as they were, no question of excess of authority could therefore arise.

4. The acts of the health committee were subsequently adopted and ratified by the city in its corporate capacity. The bill containing a specific charge for the service of cleansing the vessel passed both branches of the city government, and was paid, upon the order of its mayor; and this was done with a full knowledge of all the facts. The jury have settled this by a special finding to that effect. The necessity of this special finding was foreshadowed in the former opinion.

The opinion of the Court was drawn up by

APPLETON, J.—The presiding Justice, in the trial of this cause, was requested to instruct the jury " that the authorities of the city, or the board of health, had no legal right *to take the absolute possession or control* of the vessel or the cabin thereof, to use as a hospital or otherwise, and, if they did, the city would not be liable for such act or its consequences."

This was given with the qualification, that " they *might lawfully take possession or control* of the cabin, so far as was necessary for the relief of the sick man, if he could not be removed without imminent danger."

The presiding Judge further instructed the jury, that " the said (health) committee, *in case there was no hospital in the city*, or in case the condition of the man, who was infected with the small pox, on board the schooner, did not admit of his removal without imminent danger, had the right *to appropriate such portion of the vessel* for the accommodation of the infected person *as they should deem necessary for his relief*, and to subject the portion of the vessel, thus appropriated, to the same regulations as they would be authorized to apply to hospitals."

By the instructions, as requested, with the qualification, as given, the proposition is, that the authorities of the city may lawfully take possession or control of the cabin, so far as may be necessary for the relief of the sick man, if he could not, without imminent danger, be removed therefrom. The instruction, as given, recognizes the right to appropriate such portion of the vessel as the health committee may deem necessary for the accommodation of the sick man, in case his removal would endanger his health, or there was no established hospital in the city. As the portion of the vessel which may be deemed necessary depends upon the judgment of the committee, there is nothing to prevent their taking or appropriating the whole. The instruction, therefore, as given, amounts to this, that the city authorities, in certain specified contingencies, may *take possession of, control and appropriate* the whole or any portion of a vessel, as they may deem expedi-

ent, without the consent or concurrence of the owner or master.

Neither the defendants, nor any officers of theirs, have any right to appropriate or interfere with private property, except so far as that right may be conferred by statute.

By R. S. of 1841, c. 21, provision is made to protect the inhabitants of a town or city against " any person coming from abroad, or residing in any town," who shall be or " shall recently have been infected with any disease or sickness dangerous to the public health," &c.

By section 18, vessels arriving "at any port," having infected persons on board, are required to anchor "below the town of such port," and no person or thing on board " shall be suffered to be brought on shore until the selectmen of the town shall give their written permit for the same." Penalties for the violation of these provisions are established by section 19.

By section 20, the selectmen of the town are authorized to establish quarantine regulations, for a violation of which penalties are prescribed by § 21.

By section 22, it is made the duties of pilots to give notice to the masters of vessels of the orders and regulations of the selectmen in relation to quarantine, and, by § 23, penalties are imposed for the evasion or violation of. quarantine regulations after notice.

By section 24, signals are provided by the selectmen, and, during the time prescribed for the quarantine, no person is allowed to go on board, except by permission of the selectmen.

These are the material provisions of the statute relating to the question under discussion, so far as they relate specifically to vessels. They give no authority to the selectmen or to the health committee, who, by § 26, are clothed with the same authority, to take possession of, to control or appropriate a vessel, or any portion of the same, as a hospital.

By section 28, hospitals may. be established or licensed " within the town."

By section 32, " whenever the small pox or any other disease, dangerous to the public health, shall break out *in any town,*" it is made the duty of the selectmen to *provide* a " hospital or place for the reception for the sick and infected." In case the persons sick and infected cannot safely be removed, it is provided that " the house or place," in which they may be, " shall be considered as a hospital for every purpose before mentioned," and the persons *residing* therein are made " subject to the regulations of the selectmen." In the latter case, " the house or place is not to be regarded as a hospital, either established, licensed, or provided, within the statute, but it is to be " *considered*" as one for the purpose of subjecting those residing therein to " the regulations of the selectmen."

It is apparent, therefore, that section 32 cannot apply to a case like the present. The power of health officers over vessels, " when they arrive at any port in this State, having on board any person infected with a malignant disease," is specially prescribed in previous sections. Having made all necessary regulations for this class, the Legislature, in the following sections, including section 32, proceed to provide for cases where the small pox, or other dangerous disease, should " break out" *in any town.* In such cases, any house or place, where the sick are to be, is to be " considered" as a hospital. Now, from this section, it is clear that a vessel is not to be regarded as a " house or place" within its meaning. It is not a place in which persons reside, as in a house. The Legislature first made provisions, such as were deemed adequate for vessels, and, having done this, they proceeded to make such regulations for hospitals in towns as the occasion seemed to require. All that the Legislature intended was to subject vessels to quarantine regulations,—not to require their seizure and conversion into hospitals.

The power to remove persons and things infected, and to " impress and take up convenient houses and stores for the safe keeping," &c., of the persons and things infected, is giv-

en by § § 6, 7, 8, 9. But it is not pretended that there has been any action under these sections.

When this case was before under consideration, TENNEY, C. J., in delivering the opinion of the Court, in *Mitchell v. Rockland*, 41 Maine, 363, says, "no authority has been found which allows health officers, by virtue of their power to cause quarantine regulations to be performed *ex vi termini*, to take the vessel, in which such contagious disease is found, into their own possession and control, to the exclusion of the owner or those whom he has put in charge."

The language of the statute requires that the vessel shall perform quarantine in the cases prescribed, and all having connection with the vessel, as owner, master, &c., are required to comply with the regulations of the selectmen or health officer. This clearly implies, at least, that the owner, and those having possession and control of a vessel under him, shall not be divested of this control and possession by the municipal officers.

The instructions given are at variance with what we regard the true construction of the statute, as heretofore deliberately determined, and a new trial must be had.

*Exceptions sustained.*

TENNEY, C. J., HATHAWAY, MAY, and DAVIS, J. J., concurred.

RICE, J., did not concur.