NICHOLSON *v.* CITY OF DETROIT.

1. Municipal Corporations—Negligence of Officers—Governmental Functions—Liability.

In the absence of statute, a municipality is not liable for injuries received through the negligence of its officers while acting in the capacity of governmental agents.

2. Same.

No exception to this rule exists merely because the neglect charged relates to the control of real property the title to which is in the municipality.

3. Same.

And it is unimportant whether the statute under which the functions are exercised is permissive or mandatory, or whether it in terms confers the power or imposes the duty on the officers of the city or on the city itself.

4. Same—Respondeat Superior.

The rule of *respondeat superior* cannot be so applied as to render one liable for an act for which he would not have been liable had he himself performed it.

5. Same—Public Health—Maintenance of Hospitals.

2 Comp. Laws, §§ 4444, 4448, 4459, make it the duty of city boards of health, whenever smallpox or other disease dangerous to the public health shall break out, to provide hospitals for the sick and infected, and also authorize the establishment of permanent hospitals by cities for such purpose. Defendant city, through its officers, employed plaintiff's intestate to tear down a building that had been used as a smallpox hospital, and to construct another building adjacent thereto for the same purpose, both being located on land owned by the city. No measures were taken to disinfect the premises, nor was the intestate warned of the danger of infection; and he contracted the smallpox and died. *Held*, that the city was not liable for the negligence of its officers, as it was acting in a governmental capacity.

Error to Wayne; Donovan, J. Submitted November 12, 1901. Decided January 7, 1902.

· Case by Ada Nicholson, administratrix of the estate of Alfred Cope, deceased, against the city of Detroit, for negligently causing the death of plaintiff's intestate. From a judgment for defendant on demurrer to the declaration, plaintiff brings error. Affirmed.

*Alfred Lucking* and *Howard B. Bloomer*, for appellant.

*Timothy E. Tarsney*, for appellee.

HOOKER, C. J. The plaintiff is administratrix of one Alfred Cope, and commenced this action by declaration, under the statute, to recover, for the benefit of Cope's widow and children, for the negligent causing of his death. The declaration is in two counts, the first of which alleges, in substance, that the city was possessed, in 1894, of a lot containing 40 acres of land, upon which was an old building that had been used by the defendant as a hospital for contagious diseases, particularly smallpox. In November, 1894, the defendant began the erection of a new building designed for a similar use, and employed the plaintiff's intestate, who was a carpenter, to work upon the same. The new building was located in close proximity to the old one, and it is alleged that said old building and the surrounding grounds were infected with smallpox germs, making it dangerous for any person to be in or upon them. The plaintiff's intestate was attacked by smallpox, and, after an illness of a month's duration, died from the disease. It is alleged that the defendant was negligent in not using reasonable care to furnish him a safe place to work, and in not warning him against said dangers, and in not constructing the new building at a greater distance from the old one, and in not causing the old building and the ground to be disinfected. The second count alleges that the deceased was employed to tear down the old building, and that while so engaged he was exposed to the smallpox, and by reason thereof was seized with said disease and died. This count was otherwise similar to the first, except that

it alleges that defendant assured the deceased that it was safe for him to work upon and about said building. A demurrer was interposed, which upon the hearing was sustained; and, plaintiff not having amended the declaration within the time prescribed by the order, judgment followed, and the plaintiff has brought the case to this court by writ of error. The only question presented by counsel is whether a municipality is liable for the injury or death of an employé resulting from circumstances like those alleged, and therefore it is the only one discussed.

The law imposes upon the city the duty of taking measures for the preservation of the public health, through a board of health, whose powers and duties are statutory. Sections 376–381, Detroit Charter 1893. See, also, 2 Comp. Laws 1897, §§ 4410–4467. Section 4448 makes it a duty of the board of health of the township to provide a hospital or place of reception whenever smallpox, or any other disease dangerous to the public health, shall break out in any township, and section 4444 authorizes the establishment of permanent hospitals by the townships, while section 4459 makes the law applicable to cities; and it seems to be admitted that the city acted under these statutes.

It is the well-settled rule that the State is not liable to private persons who suffer injuries through the negligence of its officers; and the rule extends to townships and cities, while in the performance of State functions, imposed upon them by law. This subject is fully discussed in *City of Detroit* v. *Blackeby*, 21 Mich. 84 (4 Am. Rep. 450). It was there held that cities are governmental agencies, and that their officers "are in no such sense municipal agents that their negligence is the neglect of the municipality; nor will their misconduct be chargeable against them, unless the act complained of be either authorized or ratified." And in a large number of cases it has been held that there is no such liability on the part of such governmental agency unless it has been imposed by statute, and in such case it is necessarily limited by the statute. *Commissioners of Highways of Niles* v. *Martin*, 4 Mich.

557 (69 Am. Dec. 333); *Township of Leoni* v. *Taylor,*
20 Mich. 148; *Larkin* v. *County of Saginaw,* 11 Mich.
88 (82 Am. Dec. 63); *Fowle* v. *Common Council of
Alexandria,* 3 Pet. 398; *Black* v. *City of Columbia,*
19 S. C. 412 (45 Am. Rep. 785); *Gilboy* v. *City of
Detroit,* 115 Mich. 121 (73 N. W. 128); *Maxmilian* v.
*Mayor, etc., of New York,* 62 N. Y. 160 (20 Am. Rep.
468); *Webb* v. *Detroit Board of Health,* 116 Mich. 516
(74 N. W. 734, 72 Am. St. Rep. 541); *Carrington* v. *City
of St. Louis,* 89 Mo. 209 (1 S. W. 240, 58 Am. Rep. 108);
*Eastman* v. *Meredith,* 36 N. H. 298 (72 Am. Dec. 302).

Counsel for the plaintiff seem to admit the general rule
that a municipality is not liable for injuries received
through the negligence of its officers while acting in the
capacity of governmental agents.    They allege, however,
that the city owned the premises, and contracted with the
deceased, and owed the duty of warning him against hid-
den dangers; that the city is subject to the same responsi-
bility to warn those upon its land against pitfalls that
other landowners are subject to; and that the obligation
under its contract for constructing a house upon its
land entitles its employés to a safe place to work, as a
contract between private persons does.    There is some
plausibility in the suggestion, but we think it fallacious.
In a moral sense, those acting for the State owe the same
duty towards persons employed upon its behalf as that due
from the citizen.    They should also be as careful to pro-
vide safe appliances and a safe place for employés as a
private person should.    But if they do not, the sufferer is
remediless, as against the State, for the reason that it has
provided no remedy, although the State itself own the
land when the injury occurs, and make the contract of
employment.    It is an open question how far it is wise or
just to subject citizens to taxation to pay for injuries
caused by the negligence of public officers.    Such officers
are usually the representatives of the injured person as
well as of other taxpayers.    It is as much his duty to
select careful and prudent officers as it is that of the tax-

payer who is called upon to help pay for his hurt, who, perhaps, may be a woman or child, and has had no voice in the selection of the negligent officer, and therefore no duty in the premises. The rule of public liability in such cases offers such opportunities and inducements for abuse that there is some ground for doubting the expediency of relieving individuals at public expense in any such case; and, as has been said, it is only in cases where the legislature has authorized it that the obligation can be enforced against the public, instead of the individual to whose misconduct the injury is due, and who should, in justice, be primarily liable in all cases. As said by Mr. Justice CAMPBELL in *O'Leary* v. *Board of Fire & Water Com'rs of Marquette,* 79 Mich. 286 (44 N. W. 610, 7 L. R. A. 172, 19 Am. St. Rep. 173):

"It is for the legislature to determine how far, if at all, a body whose negligence, if it is so called, is imputed, and in no sense actual, shall be made subject to suit for the misconduct of its employés. There are many cases where such liability does not exist, except against the immediate individual wrongdoer. The person injured is not harmed any more where there are several persons liable than where there is only one. Imputed negligence is purely a question of public policy, and subject to legislative regulation. No one can be bound by this record except the immediate parties to it, and it would be improper to go beyond it."

The action of the city in obtaining and owning the land and erecting the hospital is as much an act of a governmental agent as the transportation of a patient thereto and his treatment therein would be. It is land owned for governmental purposes, by governmental authority, by a governmental agency, it is true, but not for the private purposes of the municipality as such, and for purposes in which the State has no interest. The title to the land is in the city, but so it would be were the interest merely a leasehold for the shortest practicable period. It is inconceivable that changes made upon premises owned by the city under this statute would stand upon any other footing

than premises rented for a month by the city for a similar purpose. In either instance it might be necessary to adapt the premises to the purposes contemplated by law, and in both instances it might be necessary to employ men for the purpose. In either case, if done by the board of health, this would be done in the performance of an imposed duty, and the city would be acting solely in the capacity of governmental agent. Therefore the doctrine of *respondeat superior* would have no application. It was said by Chief Justice MONTGOMERY in *Murray* v. *Village of Grass Lake,* 125 Mich. 2 (83 N. W. 995):

"The next section authorizes the council to appoint a board of health. It would appear that that was done in this case. It also appears that the action taken by the council was taken on the recommendation of the board of health. The action of the council was doubtless taken under authority of the section quoted. The fact that the wrong was committed by the officers of the village does not fix the responsibility upon the municipality, if the wrongful act was done under authority of a general statute, in the attempt to perform a public service not distinctively local or corporate. 2 Dill. Mun. Corp. (4th Ed.) § 974. It is apparently the established rule that local health officers, acting under a general statute of the State conferring their powers, are not performing corporate functions, but are representatives of the State, and that the municipality is not liable for the acts of such boards, either of misfeasance or nonfeasance."

Whether or not the village owned the land upon which the dam was built at the outlet of the lake, whereby the level of the lake was raised, does not appear. Presumably, it did, or acquired the right to use land for the purpose upon some terms. As in this case, something had to be done upon the land owned or controlled by the city or village to accomplish the duty imposed. Had some one been injured in the construction of the dam, through negligence, the case would have been parallel to the present case. In such a case, would it be proper to hold that the city was not liable for injuries resulting to one from the raising of the lake, and liable to another for injuries aris-

ing from the act of obstructing the water whereby the lake was raised? Could it be said that either was not the act of a governmental agent in the performance of a public duty?

In 2 Dill. Mun. Corp. (4th Ed.) § 977, the subject of the liability of municipal corporations for injuries resulting from maladministration of the health laws is discussed, and numerous cases cited. It has been held that a city was not liable to a nonpaying patient for injuries resulting from the neglect or misconduct of hospital officers or servants (*Murtaugh* v. *City of St. Louis*, 44 Mo. 479), or for the unskillful treatment of a resident physician (*Sherbourne* v. *Yuba Co.*, 21 Cal. 113 [81 Am. Dec. 151]); or for failure to take proper precautions to prevent the spread of the smallpox, or to notify the plaintiff, who was required to assist in the removal of the corpse of a person who had died of this disease, of the dangerous nature of the service required (*Ogg* v. *City of Lansing*, 35 Iowa, 495 [14 Am. Rep. 499]); or where a person caught the smallpox from a nurse who was permitted to leave the hospital without being properly disinfected (*Brown* v. *Inhabitants of Vinalhaven*, 65 Me. 402 [20 Am. Rep. 709]); or for carrying a well person to a smallpox hospital, where he contracted the disease (*Barbour* v. *City of Ellsworth*, 67 Me. 294); or for illegally ordering a ship to leave the city (*Rudolphe* v. *City of New Orleans*, 11 La. Ann. 242); or for illegally taking possession of a vessel (*Mitchell* v. *City of Rockland*, 41 Me. 363 [66 Am. Dec. 252]; *Id.*, 45 Me. 496; *Id.*, 52 Me. 118; *Harrison* v. *Mayor, etc., of Baltimore*, 1 Gill, 264); or for negligence of a servant of the board of health in removing garbage (*Condict* v. *Mayor, etc., of Jersey City*, 46 N. J. Law, 157). See, also, Tied. Mun. Corp. § 332.

We have been referred to a case which seems to go far towards sustaining the contention of plaintiff's counsel. It is *Briegel* v. *City of Philadelphia*, 135 Pa. St. 451 (19 Atl. 1038, 20 Am. St. Rep. 885). The decision is not replete with adjudicated cases. The opinion states that

the question was before the court for the first time, but that Mr. Justice Sharswood had expressly decided it in *Shuter* v. *City of Philadelphia*, 3 Phila. 228. But while the language used in that case was broad, the question arose over the contamination of a well by a leaky gas-holder owned by the city, and used for furnishing gas to its inhabitants. Thus it is apparent that the question was not before that court.

Under the title of "Liability in the Capacity of Property Owner," Mr. Dillon discusses this question, and recognizes a liability when the property is owned and used for private corporate purposes. The language is somewhat broad, but the text, and the cases cited in support of it, seem to imply the importance of the nature of the uses for which the property is owned. See 2 Dill. Mun. Corp. (4th Ed.) § 985, and note 1. In the same connection attention is called to the fact that, by the decisions, the distinction between acts done by a city in discharge of a public duty, and acts done for what is called, by way of distinction, its "private advantage or emolument," is clearly made. Most of the cases cited turn on private ownership for corporate purposes.

*Eastman* v. *Meredith*, 36 N. H. 296 (72 Am. Dec. 302), was a case where a town-house floor had given way, injuring one lawfully there for the purpose of voting. It was held that the town was not liable. In the discussion of this case there is general language relating to premises owned by municipalities for certain purposes. It is said that for private injuries caused by the improper management of their property, *as such*, they have been held to the general liability of private persons who own and manage the same kind of property. It is not to be presumed that the township did not own its town hall, or at least have a temporary title, if nothing more than a right of possession. So in the case cited in support of the above language, viz., *Bailey* v. *Mayor, etc., of New York*, 3 Hill, 541 (38 Am. Dec. 669), there was no dispute but that the city of New York owned the dam; but in neither case

did the question turn upon the ownership of the property, but, rather, upon the nature of tenure and duty. Why discuss whether the city was performing a public duty imposed by law, if the fact that it held title alone could make it liable? And how justify the holding that a township was not liable for a defective floor, where it owned the building, if mere ownership in all cases creates liability? So we see that, notwithstanding the use of broad language, the logic of these decisions supports the distinction indicated by the text of Dillon quoted, and the tests of municipal liability in such cases would seem to be two: (1) Is the act one in which the city has a private interest, instead of a public duty? (2) If not, then does the statute give redress against the municipality, either expressly or by necessary implication?

This statute provides for a board of health, all of the members of which are chosen directly or indirectly by the city authorities; but, as to the duties prescribed by law, they do not represent the city, but the State. The statute contemplates that a hospital may be provided in every township, and that, when provided, it will be practically under the control and regulation of the board of health. In one contingency the board of health is charged with the duty of providing it, and in doing that it would be acting for the State, not the city. But the statute provides that the town or city may establish such a hospital without waiting until an emergency arises. Whether that provision is mandatory, and requires the establishment of such hospital in every township or city, or is merely permissive, we need not inquire. In either case the city acts as a governmental agency in performing such duty, just as it acts in such capacity in selecting officers who are charged with such duties, and in providing and collecting from its inhabitants the necessary funds to pay the expenses, or in providing a police force for the preservation of the peace, or a fire department, and prescribing regulations for the same.

It has been intimated that an officer, though a represen-

tative of the State instead of a city, is liable for his own misfeasance or nonfeasance. Many cases so hold, and we know of none to the contrary, except where judicial functions are involved. It may be claimed that, if it be conceded that the city is made the agent of. the State, it is liable for its misfeasance and that of its subagents. From the language of this statute it may be said that some duties are imposed directly upon the city, and not upon the board of health, and that the establishment of a hospital, when there is no emergency, is one of them. Cases can be found which suggest a distinction between a duty imposed on a city directly and one imposed on an officer of the city. It may possibly be urged that in such case the city is responsible for the performance of such duty, and liable for a failure to perform it. And a few courts may so hold. It may also be urged that, being an agent to build a hospital for the State, it is liable for its neglect or misconduct, as an agent ordinarily is, though the principal is usually the sufferer.

It is manifest that one cannot be held liable under an application of the rule of *respondeat superior* where he would not be liable for the same act of negligence if done by himself, and notwithstanding his agent may be liable personally. Thus in *Forbes* v. *Board of Health*, 27 Fla. 189 (9 South. 862, 13 L. R. A. 549, 26 Am. St. Rep. 63), the board was held not liable, although a corporation subject to being sued, for the reason that it was performing a public duty. In Iowa a statute gave to the city of Lansing power to establish a board of health, and to invest it with power and duties necessary to secure the people of the city against contagious and dangerous diseases. It was held that the city was not liable for negligence of its board of health. *Ogg* v. *City of Lansing*, 35 Iowa, 495 (14 Am. Rep. 499). *City of Richmond* v. *Long's Adm'rs*, 17 Grat. 375 (94 Am. Dec. 461), is a similar case. In Nebraska a statute provided that cities should have authority to provide protection from fires. A driver of the fire department injured a pedestrian, and it was held

that the city was not liable, upon the ground that the city had no private interest in the service. *Gillespie* v. *City of Lincoln,* 35 Neb. 34 (52 N. W. 811, 16 L. R. A. 349). See, also, *Hayes* v. *City of Oshkosh,* 33 Wis. 314 (14 Am. Rep. 760); *Wilcox* v. *City of Chicago,* 107 Ill. 334 (47 Am. Rep. 434); *Fisher* v. *City of Boston,* 104 Mass. 94 (6 Am. Rep. 196); *Hafford* v. *City of New Bedford,* 16 Gray, 297; *Jewett* v. *City of New Haven,* 38 Conn. 368 (9 Am. Rep. 382). See, also, many other cases cited in *Gillespie* v. *City of Lincoln, supra.* See, also, note to *Barron* v. *City of Detroit,* 19 L. R. A. 452 (s. c., 94 Mich. 601, 54 N. W. 273, 34 Am. St. Rep. 366); *O'Rourke* v. *City of Sioux Falls,* 4 S. Dak. 47 (54 N. W. 1044, 19 L. R. A. 789, 46 Am. St. Rep. 760); *Williamson* v. *Industrial School,* 95 Ky. 251 (24 S. W. 1065, 23 L. R. A. 200, 44 Am. St. Rep. 243); *Springfield Fire & Marine Ins. Co.* v. *Village of Keeseville,* 148 N. Y. 46 (42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667); *Fuchs* v. *City of St. Louis,* 133 Mo. 168 (31 S. W. 115, 34 S. W. 508, 34 L. R. A. 118); *Hughes* v. *County of Monroe,* 147 N. Y. 49 (41 N. E. 407, 39 L. R. A. 33); *Webster* v. *County of Hillsdale,* 99 Mich. 259, 260 (58 N. W. 317); *Gilboy* v. *City of Detroit,* 115 Mich. 121 (73 N. W. 128); *Webb* v. *Detroit Board of Health,* 116 Mich. 516 (74 N. W. 734, 72 Am. St. Rep. 541).

This distinction is hinted at in a note to *Sheldon* v. *Village of Kalamazoo,* 24 Mich. 383, though it is in the nature of a negative assertion of the proposition, through the medium of an implied exception. It is there said:

"But such corporation is not liable for the negligence or malfeasance of officers or public boards acting in obedience to the mandates of the legislature, and for the public good, rather than for the peculiar benefit of the corporation, when in the performance of a duty imposed upon such officer or board instead of upon the corporation."

*Maxmilian* v. *Mayor, etc., of New York,* 62 N. Y. 160 (20 Am. Rep. 468), is a leading case. The negligence complained of was that of a driver of an ambulance, who

ran over a pedestrian.   He was at the time in the service of the commissioners of public charities in New York, and it was held that the city was not liable.   In the course of the opinion it was said:

"If the act of the officer, or the subordinate of the officer, thus appointed, is done in the attempted performance of a duty laid by the law upon him, and not upon the municipality, then the municipality is not liable for his negligence therein."

This language was descriptive of the case, rather than a limitation upon the city's immunity.   It, however, furnishes a convenient peg to hang a limitation upon, and too many lawyers and courts accept such expressions as authority of greater or less weight.   As the case shows, it turned on the general proposition that the act was in the performance of a public, not a private, duty, and that, therefore, there was no liability.

In *New York, etc., Lumber Co.* v. *City of Brooklyn*, 71 N. Y. 580 (a similar case in principle), it was said:

"It is clear, therefore, that, unless the legislature has devolved the duty of rebuilding the docks upon the corporation, it is not liable for any neglect or omission to perform it."

It is seen that this case is not a positive authority.

There is a broad distinction between an agent (*i. e.*, an officer) of the government, and a municipal corporation performing delegated functions pertaining to government. The latter becomes vested with a portion of the political power.   As said by Mr. Justice Gray in *Springfield Fire & Marine Ins. Co.* v. *Village of Keeseville, supra:*

"In such a case—and I speak, of course, of legislative acts which are general in their nature and scope—the assumption by the municipal corporation is of a further function of self or local government; and such a power is discretionary in its exercise, and carries with it no consequent liability for nonuser or misuser.   In the legislature reside the power and force of government, confided to it by the people under constitutional restrictions.   In the creation of municipal corporations, subordinate commonwealths

are made, upon which certain limited and prescribed political powers are conferred, and which enjoy the benefits of local self-government. *People* v. *Common Council of Detroit*, 28 Mich. 228 (15 Am. Rep. 202). When, in addition to those general powers which are prescribed upon the creation of a municipal corporation, general statutes permit the assumption of further powers as a means of benefiting the portion of the public in the particular locality, they invest the corporation availing itself of the permission with just so much more governmental power. Just as the general powers deposited with the various municipalities are exercised by them in a *quasi* sovereign capacity, so would any added powers designed for the general public good, though optional with the corporation as to their assumption, and in their exercise and performance local, be exercised."

The true theory is that the township or city represents the State in causing these things to be done, and, like the State, it enjoys immunity from responsibility in case of injury to individuals, leaving liability for such injuries to rest upon the persons whose misconduct or negligence is the immediate cause of the damage. The township and city must always act through officers. If it builds or repairs a road, constructs a bridge, collects a State or county tax, erects a town house, provides for the poor or the infirm, preserves the public peace, or provides a smallpox hospital, it must do it through persons selected for the purpose; and whether the law broadly directs that it shall do these things, or shall select officers whose duties are prescribed by law, its obligation is the same. The State relieves itself from the burden of multitudinous detail by delegating to and imposing upon aliquot parts of the body politic the power, and perhaps the duty, of doing for the State what it would otherwise have to supervise for itself. These powers are frequently legislative as well as ministerial. In this sense the township or city is a political agency, and the persons selected to perform the details whereby the result is accomplished are no more agents of the city or township, and no less the agents of the State, than as though the legislature had been more definite in

prescribing the duties of the officers, and merely left their selection to the municipality. In imparting a portion of its powers, the State also imparts its own immunity. Cities are upon the same footing as *quasi* corporations, when acting in a purely governmental capacity. If this were not so, the township which should erect a town hall would be liable for injuries to persons using it who should be injured by falling through a defective floor, yet it was held otherwise in *Eastman* v. *Meredith*, 36 N. H. 284 (72 Am. Dec. 302), as already shown; and, were the plaintiff's action to be sustained, it would overturn the principle upon which nearly all of the cases cited rest.

It was a cruel thing to permit the decedent to enter the valley of the shadow of death unwarned, if those who sent him knew of the danger. A case involving a stronger appeal to the sympathy of a tribunal can hardly be imagined. But we feel constrained to say that, if there is culpable negligence here, the plaintiff's remedy is limited to the persons to whose negligence the deplorable event is due, if there be a remedy. It is not a case where the doctrines of imputed negligence and *respondeat superior* can be applied.

The judgment is affirmed.

MOORE, GRANT, and MONTGOMERY, JJ., concurred: LONG, J., did not sit.