MARTINSON *v.* CITY OF ALPENA.

1. HOSPITALS — OPERATING DEFICIT — ELEVATOR SHAFT — NURSES — TORT LIABILITY.

A hospital, maintained by a State or a political subdivision thereof and which had a net operating deficit, is immune from tort liability to a special nurse who is injured from a fall down elevator shaft upon the premises.

2. TORTS—GOVERNMENTAL IMMUNITY—COMMON GOOD—PROFIT.

The test of governmental immunity from tort liability is whether the activity out of which the tort arose is for the common good of all without the element of special corporate benefit or pecuniary profit, it being immaterial that the activity be voluntary and not under compulsion of statute.

3. HOSPITALS—OPERATING DEFICIT—PUBLIC HEALTH—PUBLIC SUPPORT—NURSES—TORTS.

A general hospital which promotes the general public health and provides medical facilities and services of a nature not previously obtainable within many miles and which had a net operating deficit during existence before plaintiff special nurse sustained injuries when she fell down an elevator shaft and which was promoted and maintained largely by grants or appropriations from public sources, properly interposed defense of governmental immunity.

4. PLEADING—AMENDMENT—DISCRETION OF COURT.

The trial court did not abuse its discretion in permitting defendant general hospital to amend its pleadings before trial so as to include the defense of governmental immunity, the matter

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3] 26 Am Jur, Hospitals and Asylums, § 13.
[1–3] Liability of hospital maintained at expense of State or a political subdivision for torts of its officers or employees. 49 ALR 379.
[4] 41 Am Jur, Pleading, §§ 293, 296, 304.
[5] 14 Am Jur, Costs, §§ 23, 91.

of amendment being within the sound discretion of the court (CL 1948, § 616.1; Court Rule No 25 [1945]).

5. Costs—Public Question—Tort Liability of General Hospital. No costs are allowed in action against general hospital, founded and supported in large part by grants and appropriations from public sources, where determination as to liability for torts involved a public question.

Appeal from Alpena; Cash (Paul R.), J., presiding. Submitted June 13, 1950. (Docket No. 73, Calendar No. 44,555.) Decided October 2, 1950.

Case by Madeleine Martinson against City of Alpena and another to recover for personal injuries sustained when she fell into elevator shaft. Verdict for plaintiff. Judgment for defendant notwithstanding verdict. Plaintiff appeals. Affirmed.

*Isadore Isackson,* for plaintiff.

*Carl R. Henry, William F. Knapp* and *Philip J. Glennie,* for defendant.

Butzel, J. Madeleine Martinson, a special nurse, brought an action against the city of Alpena for injuries sustained when she fell down the elevator shaft at the Alpena General Hospital. The safety catch had failed to prevent the guard door from being opened when elevator was at another floor. At the conclusion of proofs, defendant moved for a directed verdict on the grounds of governmental immunity and contributory negligence. The trial court reserved ruling under the Empson act (CL 1948, § 691.691 [Stat Ann 1949 Cum Supp § 27.1461]) and submitted the case to the jury. A verdict for plaintiff was returned and the court in entering a judgment notwithstanding the verdict, held that defendant was entitled to judgment as a matter of law on

both grounds. Plaintiff appeals. We need only discuss the question of governmental immunity of the municipal corporation.

The Alpena General Hospital was opened in April, 1940. It had been constructed at a cost of $258,000, which was raised as follows: $121,000 through the issuance of general obligation bonds authorized by the voters of the municipality; approximately $100,-000 through a Federal works agency grant; and the remainder by individual contributions. Since 1940, there have been additional private donations and the city has made considerable further expenditures on the buildings and grounds.

The facilities and services of the hospital were not restricted to residents of the city, but were available to the entire surrounding area. The ward for contagious diseases was used for general purposes when there were no isolation cases. Patients were admitted through staff doctors and were required to pay the established rates. The county welfare board paid the bill of indigent patients.

At the date of trial the city taxpayers had paid $40,000 in reduction of the bonded indebtedness and $17,974.18 in interest on the bonds. The city did not charge the hospital for the water furnished or for services performed for the institution by salaried municipal employees. The city appropriated a total of $24,710.80 to the hospital during the first 3 years of its existence, though not thereafter, and the county made an annual $5,000 appropriation to the institution.

The balance sheet in the record shows that after a deduction for bad debts the hospital had an operating loss every year of its existence except the 1943–1944 fiscal year and that its aggregate operating deficit alone since 1940 was in excess of $26,000. This figure, which reflects neither the city and county appropriations nor the depreciation of the buildings

and equipment, negatives plaintiff's contention that the hospital is operated at an incidental profit.

A majority of jurisdictions adhere to the rule that a hospital maintained by a State or a political subdivision thereof is immune from tort liability. See the annotation in 49 ALR 379. The test of governmental immunity has been stated as follows:

"The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence." *Gunther* v. *Cheboygan County Road Commissioners,* 225 Mich 619; *Johnson* v. *Ontonagon County Road Commissioners,* 253 Mich 465; *Daszkiewicz* v. *Detroit Board of Education,* 301 Mich 212.

*Watson* v. *Bay City School District,* 324 Mich 1, in which judgment for the defendant was affirmed by an equally divided Court, is readily distinguishable from the case at bar in that athletic contests were conducted by the defendant at an incidental profit. In the opinion for affirmance, Mr. Justice Dethmers has cited numerous decisions in which this Court has stated that "sovereign immunity" from tort liability is dependent upon whether the function involved is governmental rather than proprietary in nature.

We have recognized that the maintenance of a contagious hospital by a municipal corporation is an immune governmental function (*Nicholson* v. *City of Detroit,* 129 Mich 246 [56 LRA 601]) and a city owned and operated general hospital is within the same category. The fact that a municipal medical school collected tuition fees and admitted students only upon approval of the committee on admissions did not divest its functions of governmental immunity (*Daszkiewicz* v. *Detroit Board of Educa-*

*tion, supra*), and likewise, the charges made by a city hospital to defray its operating expenses do not render its functions proprietary.

The Alpena General Hospital promoted the general public health. Through the construction and operation of the institution by the municipality, medical facilities and services of a nature not previously obtainable within many miles were available for the common good of patients from the city, county and surrounding areas.

There is no merit to plaintiff's contention that the trial court abused its discretion by allowing defendant to amend its pleadings before trial to include the defense of governmental immunity. It was within the sound discretion of the court to grant or deny leave to amend. Court Rule No 25 (1945); CL 1948, § 616.1 (Stat Ann § 27.838).

The judgment is affirmed, without costs, a public question being involved.

Boyles, C. J., and Reid, North, Dethmers, Carr, Bushnell, and Sharpe, JJ., concurred.