## McCANN v STATE OF MICHIGAN

Docket No. 54983. Argued June 4, 1974. Reargued April 7, 1976 (Calendar No. 6).—Decided November 23, 1976.

John F. McCann, publisher of a weekly newspaper, *The Weekender,* in Traverse City, published a series of articles about the death of a patient of the Traverse City State Hospital. He claims that officials and employees of the hospital then persuaded customers and advertisers to quit doing business with his newspaper, causing the destruction of his publishing business. He brought an action in the Court of Claims against the state, its Department of Mental Health, and the Traverse City State Hospital, seeking compensatory and exemplary damages for interference with existing and prospective economic relations, libel, slander, and disparagement. The Court of Claims, James E. Hoff, J., granted defendants' motion for summary judgment on the ground of sovereign immunity. The Court of Appeals, Danhof, P. J., and Holbrook and Bashara, JJ., affirmed (Docket No. 13913). Plaintiff appeals.

The Court issued four separate opinions, in which it was unanimously agreed that the activities complained of in this case were not in the exercise or discharge of a governmental function.

The Chief Justice, with whom Justice Levin concurred, would further hold as a matter of law that the complaint in this case contains allegations which, if proven, would properly allow the fact finder to determine that the torts were committed by employees of the state acting within the apparent scope of their authority, whether they were acting within the apparent scope

REFERENCES FOR POINTS IN HEADNOTES

[1–4, 6, 8–17] 50 Am Jur 2d, Libel and Slander §§ 104, 539.

57 Am Jur 2d, Municipal, School, and State Tort Liability § 27 *et seq.*

74 Am Jur 2d, Torts § 44.

Prima facie tort. 16 ALR3d 1191.

[2–4, 6, 8–17] 53 Am Jur 2d, Master and Servant § 417.

57 Am Jur 2d, Municipal, School, and State Tort Liability § 88.

[5, 7] 73 Am Jur 2d, Summary Judgment §§ 17, 23, 24, 26 *et seq.*

of their employment is a question of fact and its determination is not the proper function of the Supreme Court; it is for the trier of fact.

Justice Williams wrote that because the issue of *respondeat superior* was not considered by the Court of Appeals or the Court of Claims, the case should be remanded to determine whether the complaint pleads a cause of *respondeat superior* and for further proceedings.

Justice Ryan further wrote that whether the State of Michigan and its agencies may be held vicariously liable for the activities attributed to its employees under the doctrine of *respondeat superior* is not decided as a matter of law because it necessarily depends upon a detailed factual predicate which has not been adequately developed on this record.

Justice Fitzgerald, with whom Justices Lindemer and Coleman concurred, would further hold that the intentional, tortious activity of the officials and employees was personally motivated, was not within the scope of their employment, and was not performed in furtherance of any legitimate business of the State of Michigan, the Department of Mental Health, or the Traverse City State Hospital; accordingly, the defendants are not liable under the doctrine of *respondeat superior.*

Reversed and remanded to the Court of Claims for further proceedings.

47 Mich App 326; 209 NW2d 456 (1973) reversed.

DECISION OF THE COURT

1. STATES—TORTS—BUSINESS INTERFERENCE—GOVERNMENTAL IMMUNITY.

A complaint by a newspaper publisher that state hospital officials and employees engaged in "willful, wanton, and malicious" activity which persuaded business concerns to withdraw advertisement revenues from his paper and caused the destruction of his business along with personal anxiety, mental suffering, and strain, alleges facts which, if proven, are not subject to the defense of governmental immunity because the alleged activity is one not in the exercise or discharge of a governmental function, for which the state and its agencies are not immune from liability (MCL 691.1407; MSA 3.996[107]).

Opinion by Kavanagh, C. J.
Levin, J.

2. States—Torts—Business Interference—Respondeat Superior—Governmental Immunity.

There is no defense of governmental immunity available to the state in a case where a newspaper publisher claimed that state hospital officials and employees persuaded business concerns to withdraw advertisement revenues from his paper and caused the destruction of his business along with personal anxiety, mental suffering, and strain; whether the defendants were engaged in the exercise or discharge of a governmental function is unrelated to the state's liability under the doctrine of respondeat superior.

3. Master and Servant—Respondeat Superior—Torts—Vicarious Liability.

Under the doctrine of respondeat superior the employer is liable for the acts of his employee when the employee is acting within the apparent scope of his authority, even though acting contrary to instructions, and the employer is not able to instruct his employee only to act within the confines of the law, thereby insulating himself from vicarious liability if the employee acts otherwise.

4. Master and Servant—Respondeat Superior—Scope of Employment—Question of Fact.

Whether employees were acting within the apparent scope of their employment is a question of fact and its determination is not the proper function of the Supreme Court; it is for the trier of fact.

Opinion by Williams, J.

5. Judgment—Summary Judgment—Appeal and Error.

A court, in determining the validity of a motion for summary judgment, is to look at the facts pled in a light most favorable to the party opposing summary judgment.

6. States—Torts—Business Interference—Governmental Immunity—Governmental Function.

Activity by state employees attempting to persuade business concerns to withdraw advertisement revenues from a plaintiff's publication in an effort to cause financial destruction of that enterprise is clearly ultra vires activity and is not, therefore, "the exercise or discharge of a governmental function" under the governmental immunity statute (MCL 691.1407; MSA 3.996[107]).

Opinion by Ryan, J.

7. Judgment—Summary Judgment—Motions—Court Rules.

   *The purpose of a motion for summary judgment is to test the complaint to see if it pleads facts which support the elements of a cause of action; the scope of the examination is confined to the pleadings (GCR 1963, 117.2[1]).*

8. States—Torts—Governmental Immunity—Cause of Action.

   *A complaint against the state must plead facts in avoidance of governmental immunity to state an actionable claim; it must be demonstrated that the activity attributed to the state or its agencies does not fall within the ambit of governmental immunity established by the Legislature (MCL 691.1407; MSA 3.996[107]).*

9. States—Torts—Business Interference—Governmental Immunity.

   *A complaint by a newspaper publisher that state hospital officials and employees engaged in "willful, wanton, and malicious" activity which persuaded business concerns to withdraw advertisement revenues from his paper and caused the destruction of his business along with personal anxiety, mental suffering, and strain, alleges facts which, if proven, are in avoidance of the defense of governmental immunity because the alleged activity is one not in the exercise or discharge of a governmental function, for which the state and its agencies are not immune from liability (MCL 691.1407; MSA 3.996[107]).*

10. States—Torts—Governmental Immunity—Governmental Function.

   *Activity by a government agency which is for the common good of all without the element of special corporate benefit or pecuniary profit is engaged in a governmental function for which there is immunity from tort liability; that the activity is undertaken voluntarily and not under compulsion of statute is not of consequence (MCL 691.1407; MSA 3.996 [107]).*

Opinion by Fitzgerald, J.
Coleman and Lindemer, JJ.

11. States—Torts—Business Interference—Governmental Function—Scope of Employment.

   *Intentional, tortious activity of state hospital officials and employees was personally motivated, was not within the scope of their employment, and was not performed in furtherance of any legitimate business of the State of Michigan, the Department of Mental Health, or the Traverse City State Hospital*

*where, after plaintiff newspaper publisher had published arti-
cles on the death of a patient of the hospital, they persuaded
various business concerns to withdraw advertisement revenues
from plaintiff's weekly publication and caused the financial
destruction of his newspaper enterprise along with personal
anxiety, mental suffering, and strain; accordingly, the state and
its agencies are not liable under the doctrine of respondeat
superior.*

12. STATES—TORTS—BUSINESS INTERFERENCE—GOVERNMENTAL IMMU-
    NITY—GOVERNMENTAL FUNCTION.

   *The question of governmental immunity should not be considered
   because the activity complained of does not fall within the
   exercise or discharge of a governmental function where a
   newspaper publisher claimed that state hospital officials and
   employees persuaded various business concerns to withdraw
   advertisement revenues from his paper and caused the finan-
   cial destruction of his newspaper enterprise along with per-
   sonal anxiety, mental suffering, and strain.*

13. STATES—TORTS—EMPLOYEES—IMPUTED LIABILITY.

   *The misuse of the influence which accompanies positions of public
   responsibility does not automatically impute the resulting lia-
   bility to the state.*

14. STATES—MASTER AND SERVANT—PUBLIC AGENTS—AUTHORITY.

   *The authority of public agents extends only to those duties
   prescribed by statute and does not include activity which
   requires that authority be assumed.*

15. TORTS—BUSINESS INTERFERENCE—NEWSPAPERS—VICARIOUS LIABIL-
    ITY.

   *Vicarious liability may be imputed to the master for intentional
   torts committed by his servant when the servant's purpose,
   however misguided, is wholly or partly to further the master's
   business, but the financial destruction of a newspaper enter-
   prise goes well beyond the limits of imputed liability for an
   employee's misplaced zeal, tortured allegiance, and poor judg-
   ment, all in the interest of furthering the business of his
   employer, when the employer is a state hospital for the men-
   tally ill.*

16. STATES—TORTS—HOSPITALS—MENTAL INSTITUTIONS—SCOPE OF
    BUSINESS.

   *Removing the threat of disclosure and investigation of alleged
   mismanagement by hospital officials in order to permit contin-
   ued operation without disruption and inconvenience or to pro-*

*tect the officials from personal criticism or liability is not the business of a state mental institution.*

17. States—Torts—Governmental Immunity—Vicarious Liability.
    *A determination that conduct of state hospital officials cannot be considered a governmental function within the meaning of the defense of governmental immunity is separate and distinct from analysis of the doctrine of* respondeat superior *which neither guarantees nor precludes state liability.*

*Perlman, Garber & Holtz* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Milton I. Firestone* and *Thomas R. Wheeker,* Assistants Attorney General, for defendants.

Amci Curiae:

*Robert Reese,* Corporation Counsel, and *John E. Cross* and *Maureen P. Reilly,* Assistants Corporation Counsel, for the City of Detroit.

*Lopatin, Miller, Bindes & Freedman* (by *Victoria C. Heldman)* for Michigan Trial Lawyers Association.

*Michael F. Schmidt* for the Council of the Negligence Section, State Bar of Michigan, in favor of governmental immunity.

*Neal Bush* and *Kenneth M. Mogill* for the Council of the Negligence Section, State Bar of Michigan, in opposition to governmental immunity.

*Aloysius J. Suchy,* Corporation Counsel, and *David J. Curran* and *Dean Koulouras,* Assistants Corporation Counsel, for Wayne County.

Kavanagh, C. J. I agree with my brothers that there is no defense of governmental immunity

available to the State of Michigan and its departments in this case. I do not believe the day-to-day operation of a hospital is a governmental function. See *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976) (opinion of Fitzgerald, J. and Kavanagh, C. J.)

However, the conclusion that defendants were not engaged in "the exercise or discharge of a governmental function", per the governmental immunity act, 1964 PA 170; MCLA 691.1401 *et seq.;* MSA 3.996(101) *et seq.,* is not determinative of the state's liability under the doctrine of *respondeat superior.*

Under the doctrine of *respondeat superior* there is no liability on the part of an employer for torts committed by an employee beyond the scope of the employer's business. *Bradley v Stevens,* 329 Mich 556, 552; 46 NW2d 382 (1951). The employer is liable, however, for the acts of his employee when the employee is acting within the scope of his authority, even though acting contrary to instructions. *Poledna v Bendix Aviation Corp,* 360 Mich 129; 103 NW2d 789 (1960). The employer is also liable for the torts of his employee if "the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation". 1 Restatement Agency, 2d, § 219(2)(d), p 481. Of course, the employer is not able to instruct his employee only to act within the confines of the law, thereby insulating him from vicarious liability if the employee acts otherwise. *Anschutz v Liquor Control Comm,* 343 Mich 630; 73 NW2d 533 (1955). See also, *Barnes v Mitchell,* 341 Mich 7; 67 NW2d 208 (1954).

The issue in this case thus becomes whether

these employees of the State of Michigan were acting within the apparent scope of their employment. Justice FITZGERALD'S opinion states:

"Whether specific conduct occurred in the scope of one's employment is a subjective judgment largely dependent upon the facts and circumstances of the particular case. Our determination that the hospital officials acted outside of their scope of authority does not automatically absolve the state from vicarious liability. The general proposition that vicarious liability may be imputed to the master for intentional torts committed by his servant when the servant's purpose, however misguided, is wholly or partly to further the master's business remains viable."

I read this to say that this question is one of fact, dependent on the particular circumstances of the case, but then to hold as a matter of law that these employees were not acting within the scope of their employment. Such a determination is not within our proper function; it is for the trier of fact.

The complaint in this case alleges that the tortious conduct of the individual defendants was "made possible by their positions with the State Hospital, which parties purportedly acted on behalf of said hospital, vested with apparent authority to do so * * * ". The torts complained of include interference with existing and future economic relations, libel, slander and defamation.

I am satisfied that as a matter of law the complaint in this case contains allegations which, if proven, would properly allow the fact finder to determine that the torts were committed by employees of the State of Michigan who were acting within the apparent scope of their authority. See 1 Restatement Agency, 2d, §§ 219, 247, 248, 254, 265.

The Court of Claims did not address the merits of the vicarious liability issue. The Court of Appeals also grounded its decision on governmental immunity. The plaintiff in this case is entitled to his day in court to present his factual case at a trial on the merits, not merely a remand for more procedural determinations in a case already five years old in which not a single witness has yet been heard. I would reverse and remand for a trial to afford him that right.

Levin, J. concurred with Kavanagh, C. J.

Williams, J. The essential issue in this case is whether the Court of Claims properly granted summary judgment on the grounds that plaintiff had not averred facts which could avoid defendant state agency's claim of governmental immunity. See, *Penix v City of St Johns,* 354 Mich 259; 92 NW2d 332 (1958). See also *McNair v State Highway Department,* 305 Mich 181, 187; 9 NW2d 52 (1943).

We hold that the Court of Claims was in error.

In determining the validity of a motion for summary judgment, a court is to look at the facts pled in a light most favorable to the party opposing summary judgment. See *Durant v Stahlin,* 374 Mich 82; 130 NW2d 910 (1964).

In the instant case we agree with Justice Fitzgerald's conclusion that summary judgment is inappropriate although we define "governmental function" vertically, as in the common law, not horizontally, as Justice Fitzgerald does. See *Thomas v Department of State Highways,* 398 Mich 1; 247 NW2d 530 (1976).

In looking at the facts pled in a light most favorable to plaintiff, we find that defendant state

agency's employees were clearly engaged in *ultra vires* activity and were not, therefore, involved "in the exercise or discharge of a governmental function". Thus, the granting of summary judgment was in error.

However, we do not decide whether the pleadings support the conclusion that the state is liable under the doctrine of *respondeat superior* because that matter was not considered by the Court of Appeals or the Court of Claims.

Accordingly, we reverse the summary judgment and remand to the Court of Claims to determine whether or not a case of *respondeat superior* is well pled and for any other action not inconsistent with this opinion.

Costs of appeals to plaintiff.

RYAN, J. Plaintiff, John F. McCann, challenges the pretrial dismissal of his complaint against the State of Michigan and certain state agencies by the Court of Claims and affirmance by the Court of Appeals.

McCann was the owner of a weekly newspaper called *The Weekender.* In September 1970, the newspaper began publishing a series of articles and editorials questioning alleged unusual circumstances surrounding the death of a mental patient at Traverse City State Hospital. The articles, the complaint alleges, purported to raise the question of whether the patient expired through some sort of criminal activity, from gross negligence or negligent conduct by certain parties, or from natural causes.

Plaintiff alleges that, in response to these articles, certain hospital officials and employees engaged in a course of action in which they persuaded various business concerns to withdraw ad-

vertisement revenues from *The Weekender,* caus-
ing its financial ruin. The complaint alleges that
the hospital officials and numerous lesser em-
ployees joined together and "wilfully, wantonly,
and maliciously, by persuasion, economic and so-
cial pressure, threats and innuendos directed at
claimant's customers, advertisers, and claimant
himself, did attempt to cause the demise and
destruction of *The Weekender,* and did request
that said customers and advertisers refuse to do
business with plaintiff's publication". Plaintiff
charges specifically that these hospital officials and
employees did "openly and covertly, by conversa-
tion, letter, telephone, and by any means availa-
ble, attempt to cause almost every existing adver-
tiser and customer to withdraw from *The Weeken-
der".* According to plaintiff, the campaign was
successful, plaintiff's publishing concern was ulti-
mately destroyed, and he experienced extreme
anxiety, mental suffering and strain.

Plaintiff's complaint asserted claims based on
interference with contractual relations, interfer-
ence with prospective economic advantage, libel
and slander, and prayed for compensatory and
exemplary damages. The Attorney General filed a
pleading entitled "motion to dismiss" on behalf of
all the defendants based on GCR 1963, 117.2(1),
asserting that the plaintiff failed to state a claim
on which relief could be granted, because the state
and its agencies are immune from liability under
the doctrine of governmental immunity. The Court
of Claims granted the motion, stating in part:

"The Michigan Court of Claims is a court of limited
jurisdiction and the State of Michigan having clearly
retained its defense of sovereign immunity in this par-
ticular action asserted against it by the plaintiff this
Court is simply without any power to afford plaintiff

any relief by way of damages on the claim or claims
asserted."

The Court of Appeals affirmed the summary
judgment stating:

"By its terms, 1970 PA 155 immunizes the state and
lesser political subdivisions from tort liability, subject to
certain statutory exceptions, *i.e.,* defective maintenance
of roads and public buildings, negligent operation of
motor vehicles, and actions which arise out of the
government's engagement in a proprietary function. We
would add to this list of legislative exceptions, two
judicial exceptions which have continuing vitality: ac-
tions grounded in nuisance, *Buckeye Union Fire Insur-
ance Co v Michigan,* 383 Mich 630 [178 NW2d 476]
(1970), and actions which allege an uncompensated
taking of property, *Geftos v Lincoln Park,* 39 Mich App
644, 656 [198 NW2d 169] (1972).

"Plaintiff, however, has failed to fit himself within
any of the exceptions to the doctrine of governmental
immunity enumerated above."

The Court of Appeals apparently concluded that,
because plaintiff had failed to plead facts which
would constitute one of the exceptions it enumer-
ated, he failed to state the elements of a cause of
action in tort against the state or its agencies.

We reverse the summary judgment of dismissal
and remand the matter to the Court of Claims for
further proceedings.

I

It is axiomatic that the purpose of a motion for
summary judgment based on GCR 1963, 117.2(1) is
to test the complaint to see if the plaintiff has pled
facts which support the elements of a cause of
action. The scope of the examination is confined to

the pleadings. See *Pompey v General Motors Corp,* 385 Mich 537, 563; 189 NW2d 243 (1971); *Professional Facilities Corp v Marks,* 373 Mich 673, 679; 131 NW2d 60 (1964).

To state an actionable claim against the state, a pleader must plead facts in the complaint, in *avoidance* of immunity.[1] This can be accomplished by stating a claim which fits within one of the legislatively or judicially created exceptions to governmental immunity, as enumerated in the Court of Appeals opinion in this case, quoted above, or simply by pleading facts which otherwise demonstrate that the activity alleged is not activity "in the exercise or discharge of a governmental function" under MCLA 691.1407; MSA 3.996(107). Simply put, it must be demonstrated that the activity attributed to the state or its agencies does not fall within the ambit of immunity established by the Legislature in 1970 PA 155.[2]

In the case at bar, in order for the courts below to grant the state's motion based on GCR 1963, 117.2(1), they would have had to find that the complaint, taken in the light most favorable to the

---

[1] At first impression, it may appear appropriate to characterize governmental immunity as an affirmative defense. However, a careful analysis of the doctrine as construed by this Court indicates that, to plead a cause of action against the state or its agencies, the plaintiff must plead and prove facts in avoidance of immunity. In *McNair v State Highway Dept,* 305 Mich 181, 187; 9 NW2d 52 (1943), for instance, we held that the state's failure to plead sovereign immunity will not constitute a waiver because "failure to plead the defense of sovereign immunity cannot create a cause of action where none existed before". In *Penix v City of St Johns,* 354 Mich 259; 92 NW2d 332 (1958), we held that a complaint which contained no averment that the defendant was engaging in a proprietary function, and which in fact alleged activity to which governmental immunity applied, stated no cause of action against the municipality. Thus, although we have on occasion referred to governmental immunity as a defense, *see McNair v State Highway Dept; Martinson v Alpena,* 328 Mich 595, 599; 44 NW2d 148 (1950), our past treatment of the doctrine indicates that its inapplicability is an element of a plaintiff's case against the state.

[2] MCLA 691.1401–691.1415; MSA 3.996(101)–3.996(115).

plaintiff, failed to state facts in avoidance of immunity. We agree with the Court of Appeals that plaintiff "has failed to fit himself within any of the exceptions to the doctrine of governmental immunity". However, we find that the complaint alleges facts which, if proved, would justify a fact finder in concluding that the activity attributed to the defendants is not "in the exercise or discharge of a governmental function" under the statute and for which the state and its agencies are not immune from liability.

## II

The Legislature enacted the governmental immunity statute in response to the partial abrogation of the judicial version of that doctrine by the decision in *Williams v Detroit,* 364 Mich 231; 111 NW2d 1 (1961). See *Thomas v Department of State Highways,* 398 Mich 1, 10 fn 4; 247 NW2d 530 (1976). The statute, MCLA 691.1407; MSA 3.996(107), reads:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

We held today in *Thomas v Department of State Highways, supra,* that this statute requires us to resort to the common law for a definition of the phrase "engaged in the exercise or discharge of a governmental function".

Historically, the cases have tended to separate state activity into two categories: governmental

functions and proprietary functions. *E.g., Richards v Birmingham School District,* 348 Mich 490; 83 NW2d 643 (1957); *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950). These decisions, however, do not control the scope of our inquiry in every case because there are certain activities which do not fit into either category.

The Legislature has defined "proprietary function", MCLA 691.1413; MSA 3.996(113):

" * * * Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the state, excluding, however, any activity normally supported by taxes or fees. * * * "

The definition of "governmental function" most frequently cited by Michigan courts is found in *Gunther v Cheboygan County Road Comm'rs,* 225 Mich 619; 196 NW 386 (1923). Therein, this Court approved the following formulation of the test from *Bolster v City of Lawrence,* 225 Mass 387; 114 NE 722 (1912):

"The underlying test is whether the act is for the common good of all without the element of special corporate benefit or pecuniary profit. If it is, there is no liability; if it is not, there may be liability. That it may be undertaken voluntarily and not under compulsion of statute is not of consequence."

See also *Martinson v Alpena, supra; Daszkiewicz v Detroit Board of Education,* 301 Mich 212; 3 NW2d 71 (1942); *Johnson v Ontonagon County Road Comm'rs,* 253 Mich 465; 235 NW 221 (1931).

The defendants in this case assert that because the operation of Traverse City State Hospital constitutes the exercise or discharge of a governmen-

tal function, plaintiff has failed to state a cause of action against the state. Although it is true that we have held generally that hospitals operated by the state or its political subdivisions are engaged in a governmental function, see, *e.g., Martinson v Alpena, supra,* this does not decide the question at bar. It is not true, of course, that a lawsuit against the state will not lie simply because the defendant is a state agency. We look to the facts pleaded in the complaint to determine whether the specific tortious activity alleged against the state or its agencies is within the protection of the immunity doctrine.

We turn now to the specifics of the complaint here in question.

In passing on a motion for summary judgment, we are obliged to examine the pleadings in the light most favorable to the party opposing the motion. In this case, plaintiff has alleged in his complaint that Traverse City State Hospital employees engaged in "willful, wanton and malicious" activity in their capacity as state employees, which was designed to cause or attempt to cause "almost every existing advertiser and customer to withdraw [his advertising business] from *The Weekender"*. Such activity cannot fairly be said to be "conducted primarily for the purpose of producing a pecuniary profit for the state". Nor can these allegations, if proved, demonstrate an "act * * * for the common good of all". Consequently, the alleged activity cannot be readily characterized as either a governmental or a proprietary function.

To the contrary, we find that the plaintiff has pleaded facts which, if proved, would justify a fact finder in concluding that the state or its agencies were not engaged "in the exercise or discharge of

a governmental function", as that phrase has been defined by the courts of this state. Because plaintiff has pled facts in avoidance of immunity, it must be held that his complaint survives an attack under GCR 1963, 117.2(1), and that the trial court erred in dismissing this action.

In reaching this conclusion, it is important to note that we do not decide whether the State of Michigan and its agencies may be held vicariously liable for the activities attributed to its employees in this case. The lower courts did not address that issue; their orders of dismissal were based solely on the conclusion that the state is immune from liability in this case. We are not disposed to conclude that the *respondeat superior* issue, which has been addressed by my Brother FITZGERALD and which necessarily depends upon a detailed factual predicate, can be decided by this Court as a matter of law. Moreover, the question has not been adequately briefed or argued to this Court. We do not decide, therefore, whether the state's employees were acting in their official capacity, as alleged, or within the scope of their employment.

The Court of Appeals is reversed and the cause is remanded to the Court of Claims for further proceedings.

FITZGERALD, J. Our inquiry examines whether liability may be imputed to the State of Michigan as a result of conduct by Traverse City State Hospital officials and employees who, by successfully implementing a course of action which persuaded various business concerns to withdraw advertisement revenues from plaintiff John F. McCann's weekly publication, *The Weekender,* caused the financial destruction of his newspaper enterprise along with personal anxiety, mental suffering, and strain. We conclude that such intentional,

tortious activity was personally motivated, was not within the scope of their employment, and was not performed in furtherance of any legitimate business of the State of Michigan, the Department of Mental Health, or Traverse City State Hospital. Accordingly, we would absolve defendants from liability and remand this case to the Court of Claims for entry of an order of dismissal.

The death of John B. Cronk, a mental patient at Traverse City State Hospital, prompted a series of articles to appear in the weekly newspaper, *The Weekender*. Plaintiff, owner and publisher of the weekly, questioned the circumstances of Mr. Cronk's death and inquired as to whether death was attributable to natural causes or resulted from criminal activity, negligence, or gross negligence on the part of hospital personnel. These articles were responded to by hospital officials and numerous lesser employees who, claims plaintiff, joined together and "willfully, wantonly, and maliciously, by persuasion, economic and social pressure, threats and innuendos directed at claimant's customers, advertisers, and claimant himself, did attempt to cause the demise and destruction of *The Weekender*, and did request that said customers and advertisers refuse to do business with plaintiff's publication". Plaintiff charges specifically that these hospital officials and employees did "openly and covertly, by conversation, letter, telephone, and by any means available, attempt to cause almost every existing advertiser and customer to withdraw from *The Weekender*". The campaign was successful, plaintiff's publishing concern was ultimately destroyed, and he experienced extreme anxiety, mental suffering and strain.

Plaintiff sought compensatory and exemplary damages from the state in the Court of Claims for

deliberate interference with existing economic relations, interference with prospective economic advantage, and damages for libel, slander, and disparagement of his personal and business reputation. The identical action was instituted in the United States District Court against the state employees in their individual capacities. Defendant's motion for summary judgment was granted by the Court of Claims because plaintiff failed to state a valid claim upon which relief could be granted based upon the defense of sovereign immunity. The Court of Appeals affirmed on the same grounds and we granted leave to appeal.

Plaintiff would disallow the defense of sovereign immunity because such malicious conduct is completely unrelated to the care and treatment of the mentally ill, yet simultaneously impute liability to the defendants because they placed the officials in a position to commit the acts charged which were, he maintains, within their scope of employment. We agree that the question of governmental immunity should not be considered because the complained-of activity does not fall within "the exercise or discharge of a governmental function".[1] We turn, then, to plaintiff's alternate theory of liability, the doctrine of *respondeat superior.*

It is argued that *respondeat superior* considers the act of an employee during the course of em-

[1] MCLA 691.1407; MSA 3.996(107) provides:

"Except as in this act otherwise provided, all governmental agencies shall be immune from tort liability in all cases wherein the government agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided herein, this act shall not be construed as modifying or restricting the immunity of the state from tort liability as it existed heretofore, which immunity is affirmed."

The posture of this case renders inappropriate any re-examination of the meaning accorded the term "governmental function". Presently before this Court are other cases which permit a thorough analysis of the continued viability of governmental immunity.

ployment as the legal act of the employer. *Gifford
v Evans,* 35 Mich App 559; 192 NW2d 525 (1971).
Plaintiff argues that this doctrine is applicable to
*intentional* as well as negligent conduct, citing
*Guipe v Jones,* 320 Mich 1; 30 NW2d 408 (1948)
(employer held liable for assault committed by
employee-bartender); *Poledna v Bendix Aviation
Corp,* 360 Mich 129; 103 NW2d 789 (1960) (corpora-
tion held liable for libel and slander committed by
its employment manager); and *Grist v The Upjohn
Co,* 368 Mich 578; 118 NW2d 985 (1962) (corporate
employer was a proper party to a suit against its
employees for defamation and interference with
future economic advantage).

Defendant disagrees, contending that the State
of Michigan is not liable for intentional torts of its
employees where the employees were acting be-
yond the scope of their employment and not in
furtherance of any legitimate state interest. De-
fendant cites *Martin v Jones,* 302 Mich 355; 4
NW2d 686 (1942) (shooting by a gas station attend-
ant of a customer following an argument); *Bradley
v Stevens,* 329 Mich 556; 46 NW2d 382 (1951) (rape
of a customer by a gas station attendant); and
*Hersh v Kentfield Builders, Inc,* 385 Mich 410;
189 NW2d 286 (1971) (unprovoked assault of sales-
man by employee of defendant). In the instant
case, defendant believes the officers and employees
of the hospital exceeded their statutory authority,
in no way furthered any legitimate end of govern-
ment, and acted with a personal desire to injure
the plaintiff.

In each of the three cases cited by plaintiff, the
employees acted *within* the scope of their employ-
ment. The point emphasized is the *intentional*
nature of the tortious conduct involved. Plaintiff's
argument provides no discussion of what consti-

tutes the officials' authorized scope of employment in the instant case, indicating that this question should be determined by the triers of fact. Defendant does consider the official scope of employment and concludes that their malicious campaign which caused the financial destruction of plaintiff's enterprise, together with personal anxiety and mental suffering, was in no way related to their sole function which is the care and treatment of the mentally ill.[2] Defendant also contends that state officials are without the power to increase their statutory authority.

We examine further the statutory function of the Traverse City State Hospital by reviewing the duties of its chief executive officer, the medical superintendent.[3] His ultimate responsibility is to insure that the hospital provides "humane, curative, scientific, and economical treatment of mentally ill persons".[4] His statutory powers and duties[5]

---

[2] MCLA 330.11; MSA 14.801 provides:

"There shall be maintained within the state the following state institutions, all of which are placed under the jurisdiction and control of the department of mental health; namely, at * * * Traverse City, a hospital for the humane, curative, scientific and economical treatment of mentally ill persons to be known as the Traverse City state hospital; * * * ."

[3] It is not alleged that the State Hospital Commission knew or should have known of any unusual propensities attributable to the medical superintendent or any other hospital officials which would prevent them from discharging their duties in an appropriate manner.

[4] Fn 2, *supra*.

[5] MCLA 330.15; MSA 14.805, repealed by 1974 PA 258, provided in part: "The medical superintendent of each institution shall be its chief executive officer, and in his absence or sickness, the assistant medical superintendent shall perform the duties and be subject to the responsibilities of the medical superintendent. Subject to the bylaws and regulations established by the commission the medical superintendent shall have the general superintendence of the buildings, grounds and farm, together with the furniture, fixtures and stock, and the direction and control of all persons therein, and shall:

"First, Personally maintain an effective supervision and inspection of all parts of the institution and generally direct the care and

generally include the direction of care and treatment, authority to hire and discipline personnel, prescribe their duties, and to provide instructions which insure good conduct, fidelity, and economy in every department. The additional named hospital officials include the community relations executive, the administrative officer, and the director of nursing. No record sets forth the specific nature of their assigned duties, and neither the Court of Claims nor the Court of Appeals discussed whether the campaign which eventually destroyed plaintiff's newspaper enterprise fell within their scope of employment.

Authorized employment activity cannot be expediently circumscribed and expanded to insure state liability simultaneously under both the governmental tort immunity act and the doctrine of *respondeat superior.* Whatever the duties assigned by the medical superintendent to the other officials might have been, none would include activities so patently abusive of their legitimate responsibilities. Misuse of the influence which accompanies

treatment of the patients. To this end the superintendent shall personally examine or delegate someone to examine the condition of each patient after his admission to the institution, and shall regularly visit all the wards or apartments for patients, at such times as the rules and regulations of the institution shall prescribe and at such other times as he shall deem necessary.

"Second, Nominate his coresident officers, with power to assign to them their respective duties subject to the bylaws. He shall have power whenever he shall deem it for the best interests of the institution to suspend until the next meeting of the commission any officer.

"Third, Appoint, with the approval of the commission, such and so many other assistants, attendants and employees as he may deem necessary and proper for the economical and efficient performance of the business of the institution; prescribe their several duties; and fix with the approval of the commission, their compensation.

"Fourth, Give such orders and instructions as he may deem best calculated to insure good conduct, fidelity, and economy in every department.

"Fifth, Maintain salutary discipline among all who are employed in the institution, and enforce strict compliance with his instructions and uniform obedience to all rules and regulations of the institution."

positions of public responsibility does not automatically impute the resulting liability to the state and we decline to do so today. The authority of public agents extends only to those duties prescribed by statute and does not include activity which requires that authority be assumed. *Lake Twp v Millar,* 257 Mich 135; 241 NW 237 (1932). Were the duties of the medical superintendent not provided by statute, we would still absolve the state from liability since the intentional wrongs committed against plaintiff went beyond any conceivable scope of the care and treatment of the mentally ill.

Whether specific conduct occurred in the scope of one's employment is a subjective judgment largely dependent upon the facts and circumstances of the particular case. Our determination that the hospital officials acted outside of their scope of authority does not automatically absolve the state from vicarious liability. The general proposition that vicarious liability may be imputed to the master for intentional torts committed by his servant when the servant's purpose, however misguided, is wholly or partly to further the master's business remains viable.[6] However, we perceive a distinction between furthering the legitimate goal of providing care and treatment to the mentally ill and insulating the hospital from public disclosure of alleged acts of mismanagement in the conduct of their business. The financial destruction of plaintiff's business enterprise goes well beyond the limits of imputed liability for an employee's misplaced zeal, tortured allegiance, and poor judgment, all in the interest of furthering the business of his employer. It is not the business of

[6] Prosser, Torts (4th ed), § 70, p 464; Harper & James, Law of Torts, § 26.9, p 1390.

the hospital to exert its economic influence upon the business community to coerce the withdrawal of advertising revenues from a newspaper enterprise reporting on alleged mismanagement in the conduct of the hospital's business. Removing the threat of disclosure and investigation of alleged mismanagement by hospital officials in order to permit continued operation without disruption and inconvenience or to protect themselves from personal criticism or liability is not the business of a state mental institution.

Plaintiff contends that if we focus "on the operant facts and immediate setting that occasioned the complained of wrongs", we would conclude that this "wanton, willful, and malicious" conduct is in no way related to the governmental function of the hospital. Rather than conclude also that the complained-of conduct is outside the officers' scope of employment, plaintiff would have this resolved by the finder of fact. We would agree that the conduct of the hospital personnel cannot be considered a governmental function. This determination is of course separate and distinct from analysis of the doctrine of *respondeat superior* which, as plaintiff correctly observes, "neither guarantees nor precludes" state liability.

However, the foregoing discussion of this doctrine as applied to the unique facts of this case convinces us that this Court should not lend its imprimatur upon any determination that conduct so totally unrelated to the legitimate functioning and management of a state institution could be within the apparent authority of state officials and employees.

The remaining issues raised are without merit and require no further discussion.

This case is remanded to the Court of Claims for

entry of an order of dismissal. No costs, a public question.

COLEMAN and LINDEMER, JJ., concurred with FITZGERALD, J.