MURRAY v BEYER MEMORIAL HOSPITAL

Docket Nos. 61673, 61674. Argued January 8, 1980 (Calendar No. 7).—
Decided June 30, 1980.

Ronald L. Murray and Kathleen M. Murray for themselves, and
Ronald L. Murray as next friend of Kathleen J. Murray, a
minor, brought an action against Beyer Memorial Hospital,
operated in Ypsilanti by Peoples Community Hospital Author-
ity, a public community hospital authority, and others. The
actions were for negligence in the medical care and treatment
of the child at the time of her birth in 1970. The Washtenaw
Circuit Court, Ross W. Campbell, J., granted accelerated judg-
ment for the defendant hospital on the ground of governmental
immunity. The Court of Appeals, D. E. Holbrook, P.J., and V. J.
Brennan and M. F. Cavanagh, JJ., affirmed in an unpublished
per curiam opinion (Docket Nos. 77-3159, 77-3160). Plaintiffs
appeal. In an opinion by Justice Kavanagh, joined by Justices
Levin, Fitzgerald, and Moody, the Supreme Court *held*:

1. On December 27, 1978, after the application for leave to
appeal was filed in this case, the Court decided in *Parker v
Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), that a
municipally owned general hospital is no longer immune from
tort liability because it is not within the definition of a "govern-
mental function" under the governmental tort liability act. The
adventitious disposition of another case while the application
for leave to appeal in this case was held in abeyance by the
Court should not deprive the plaintiffs of the benefit of the new
rule or make available to the defendant hospital a defense
which will no longer be enforced for others. The rule an-
nounced in *Parker* is to be applied in all cases pending on

REFERENCES FOR POINTS IN HEADNOTES

[1-6] 20 Am Jur 2d, Courts § 233.
Prospective or retroactive operation of overruling decision. 10
ALR3d 1371.
[1, 4] 40 Am Jur 2d, Hospitals and Asylums § 20.
Immunity from liability for damages in tort of state or governmen-
tal unit or agency in operating hospital. 25 ALR2d 203.
[1] 57 Am Jur 2d, Municipal, School, and State Tort Liability § 67.
[6] 20 Am Jur 2d, Courts § 183 *et seq.*

December 27, 1978 in which an express challenge to the defense of governmental immunity was made and preserved as well as prospectively to all cases started after that date.

2. Whenever a new rule of law is promulgated some unfairness to those who relied on the old rule may be claimed. However, courts do not alter an established rule of law without thorough evaluation of the policy consideration involved; when the decision to overrule precedent is finally made, the Court is satisfied that the importance of the result reached outweighs any unfairness to those negatively affected by the decision. Applying the new rule prospectively with the exception of the case in which it was declared and cases pending on appeal in which the issue was raised and preserved is an attempt to limit any such unfairness.

3. In these cases the Court has removed a defense, not imposed a liability. A trial is still forthcoming, at which the plaintiffs will be required to prove their allegations by a preponderance of the evidence and the defendant hospital will have a full day in court, with all the safeguards of a trial remaining.

Justice Williams, concurring, agreed that, now that it is the law of this state that a municipally owned general hospital providing a public medical service for a fee is not performing a governmental function within the meaning of the immunity statute, the rule should apply to all cases pending on the date the rule was decided in which an express challenge to the defense of governmental immunity was made and preserved as well as all cases started after that date. The prospective only rule in another case concerning the liability of charitable hospitals is not entirely applicable to public hospitals. Furthermore, the law as to what constitutes governmental immunity has for some years been in a state of flux, but the opinions of the Court should have warned those public agencies which might be liable to seek protection either through insurance or legislative action.

Reversed and remanded for further proceedings.

Justice Ryan, joined by Chief Justice Coleman, dissented. He would apply *Parker* in a purely prospective fashion, that is, to causes of action accruing after the date of decision in that case. At the time of the occurrences in this case in 1970, the law was well settled, and had been for more than three quarters of a century, that the operation of a publicly owned hospital was a governmental function for which there was immunity from tort liability. The Legislature, just three months before, had reenacted the governmental immunity statute employing the

language of art having the well settled meanings announced and adopted by the Supreme Court and the Court of Appeals in case law. The defendant hospital authority was entitled to conclude in 1970 that the Court and the Legislature meant what they said about the immunity of public hospitals. Reliance by the defendant hospital, and those similarly situated, upon the immunity doctrine as historically applied was important not only as an abstract matter of assuring consistency and predictability in the law of torts, but also as a matter of fairness to the taxpayers who own and fund the public hospital authority, which was not insured for the liability to which it is now retroactively exposed.

A few of the reasons for purely prospective application of *Parker* are:

a. An accurate assessment of judicial lawmaking recognizes that the Court is making new law, and it ought to "legislate" with purely prospective effect, as the Legislature does.

b. As a practical matter, retroactive application of *Parker* will confer a cause of action upon an uncertain number of potential plaintiffs, and add a substantial burden to already overcrowded civil trial dockets.

c. In extending the new doctrine of *Parker* to embrace a cause of action which accrued more than nine years ago, the Court once again undermines this state's badly damaged doctrine of stare decisis, of which the rule of purely prospective application is a logical corollary. By this action the Court proves that insurers, attorneys, the Legislature, governmental agencies, the courts, and the public were unwise to rely upon the Court's statements on the law of governmental immunity and should not rely on future pronouncements because the Court may change the law retroactively for a period of as much as a decade.

### OPINION OF THE COURT

#### 1. GOVERNMENTAL IMMUNITY — HOSPITALS — TORTS — COMMON LAW.

The decision which announced that a governmental body is not immune from tort liability for medical malpractice in treating a patient at its general hospital applies to all cases pending on December 27, 1978, the date of the overruling decision, in which an express challenge to the defense of governmental immunity was made and preserved, as well as prospectively to all cases started after that date (MCL 691.1407; MSA 3.996[107]).

2. COMMON LAW — NEW RULE OF LAW — APPEAL AND ERROR.

The adventitious disposition of one case, which removes a common-law defense to an action in tort rather than imposes a liability, while other cases were held in abeyance by the Court to await the decision whether to overrule precedent, should not deprive the other plaintiffs of the benefit of the new rule or make available to the defendants a defense which will no longer be enforced for others.

### CONCURRING OPINION BY WILLIAMS, J.

See headnote 1.

3. GOVERNMENTAL IMMUNITY — TORTS — COMMON LAW.

*The law as to what constitutes governmental immunity has for some years been in flux, but the opinions of the Court should have warned those public agencies which might be liable to seek protection either through insurance or legislative action.*

### DISSENTING OPINION BY RYAN, J.

4. GOVERNMENTAL IMMUNITY — HOSPITALS — TORTS — COMMON LAW.

*A public community hospital authority was entitled to conclude in 1970 that the Court and the Legislature meant what they said about the immunity of public hospitals from tort liability because the law was well settled, and had been for more than three quarters of a century, that the operation of a publicly owned hospital was a governmental function, and the Legislature had recently reenacted the governmental immunity statute employing the language of art having the well settled meanings announced and adopted in Michigan case law (MCL 691.1407; MSA 3.996[107]).*

5. COMMON LAW — NEW RULE OF LAW.

*The Supreme Court, when it engages in judicial lawmaking by overruling precedent, is making new law, and it ought to "legislate" with purely prospective effect, as the Legislature does.*

6. COMMON LAW — NEW RULE OF LAW — STARE DECISIS.

*The rule of purely prospective application of a judicial decision which overrules precedent is a logical corollary of the doctrine of stare decisis; retroactive application of new case law, especially that effecting significant change, depreciates the ends to which the doctrine of stare decisis is directed: stability, certainty, and fairness.*

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Stanley S. Schwartz* and *Richard D. Toth),* for plaintiffs.

*Cozadd, Shangle & Smith* (by *B. Ward Smith* and *Daniel J. Andrews)* for defendant Beyer Memorial Hospital.

KAVANAGH, J. This case involves two complaints, consolidated on appeal, for alleged negligence in the care and treatment of a child at the time of her birth on November 29, 1970. The parents' complaint was filed on November 28, 1972. The complaint on behalf of the child was filed on February 23, 1973. The defendant hospital filed a motion for summary and/or accelerated judgment on the ground that the hospital was engaged in a governmental function and was therefore immune from tort liability under MCL 691.1407; MSA 3.996(107). The circuit court granted the hospital accelerated judgment on December 3, 1975. The Court of Appeals affirmed in an unpublished per curiam opinion on June 12, 1978. Application for leave to appeal to this Court was filed on June 28, 1978.

On December 27, 1978 this Court rendered a decision in *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978). Subsequently we granted leave to determine whether the *Parker* decision should be applied to this case to require reversal and remand to the circuit court for further proceedings. We hold it should, and the rule of *Parker* is to be applied to all cases pending on December 27, 1978 in which an express challenge to the defense of governmental immunity was made and preserved as well as all cases started after that date. See *Placek v Sterling Heights,* 405 Mich 638, 662-668; 275 NW2d 511 (1979); *Pittman v City of*

*Taylor,* 398 Mich 41, 50; 247 NW2d 512 (1976); *Daley v LaCroix,* 384 Mich 4, 14; 179 NW2d 390 (1970); *Bricker v Green,* 313 Mich 218, 236; 21 NW2d 105 (1946).

In *Parker,* four Justices agreed that the activities of a municipally owned general hospital did not constitute a "governmental function" within the meaning of MCL 691.1407; MSA 3.996(107), and thus were not entitled to governmental immunity. Plaintiffs claim that the rule of *Parker* should apply to the instant case for several reasons: The injury involved here occurred approximately two months after the injury of Parker; they have disputed the defendant hospital's claim to immunity at every step of the proceeding; the fortuity that Parker's case attacking governmental immunity for the day-to-day operation of a hospital was decided first should not deprive plaintiff of the benefit of the rule. (See *Placek, supra,* 667.)

Defendant, citing *Parker v Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960), argues for the rule adopted in that case and urges that *Parker v Highland Park, supra,* be applied prospectively from the date the opinion was released and not cover other cases pending on that date.

We are satisfied that the adventitious disposition of *Parker* while we held plaintiffs' application in abeyance should not deprive plaintiffs of the benefit of the rule or make available to defendant a defense we will no longer enforce for others.

We acknowledge that whenever a new rule of law is promulgated some unfairness to those who have relied on the old rule may be claimed. Courts, however, do not alter an established rule of law without thorough evaluation of the policy considerations involved. When the decision to overrule precedent is finally made, the Court is satis-

fied that the importance of the result reached outweighs any unfairness to those negatively affected by the decision. Applying the ruling prospectively with the exception of that case and cases pending on appeal in which the issue was raised and preserved is an attempt to limit any such unfairness.

As Justice MOODY recognized in his concurring opinion in *Parker* we have removed a defense, not imposed a liability.

"It also should be noted that a full trial is still forthcoming. At trial, plaintiffs will be required to prove their allegations of malpractice by a preponderance of the evidence. Defendant will have a full day in court. Therefore, though the defense of governmental immunity for public general hospitals is removed, all the safeguards of a trial remain."

Reversed and remanded. No costs, a public question.

LEVIN, FITZGERALD, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, J.

WILLIAMS, J. *(concurring)*. A majority of this Court in separate opinions determined a municipally owned general hospital providing a public medical service for a fee was not performing a governmental function within the meaning of MCL 691.1407; MSA 3.996(107). *Parker v Highland Park,* 404 Mich 183; 273 NW2d 413 (1978). I joined two of my colleagues in dissenting from that result. 404 Mich 183, 202.

However, now that the rule in *Parker* is the law of this state, I concur with my Brother KAVANAGH that that rule should apply "to all cases pending on December 27, 1978 in which an express chal-

lenge to the defense of governmental immunity
was made and preserved as well as all cases
started after that date" *(ante,* p 221). See my
concurring opinion in *Pittman v City of Taylor,*
398 Mich 41, 51; 247 NW 512 (1976); *Bricker v
Green,* 313 Mich 218, 236; 21 NW2d 105 (1946).
The prospective only ruling of *Parker v Port Hu-
ron Hospital,* 361 Mich 1; 105 NW2d 1 (1960), is
not entirely applicable to this case. First of all,
that case involved a charitable hospital, whereas
this case involves a public hospital. Second, unfor-
tunately, the state of the law as to what consti-
tutes governmental immunity, without further leg-
islative definition, has for some years been in flux.
While in the field of governmental immunity there
has been no such clear and simple signal of change
as was specifically given in comparative negli-
gence, *Placek v Sterling Heights,* 405 Mich 638,
662-668; 275 NW2d 511 (1979), the opinions of this
Court have been such as should warn those who
might possibly be affected that they had better
seek protection either through insurance or
through legislative redefinition. See, for example,
*Parker v Port Huron Hospital,* 361 Mich 1; 105
NW2d 1 (1960), itself; *Williams v Detroit,* 364 Mich
231; 111 NW2d 1 (1961); and more recently and
subsequent to the facts of this case, the dissenting
opinions in *Thomas v Dep't of State Highways,* 398
Mich 1, 14, 25; 247 NW2d 530 (1976); *Bush v
Oscoda Area Schools,* 405 Mich 716, 734; 275
NW2d 268 (1979).

RYAN, J. *(dissenting).* The argument for except-
ing the operation of a publicly-owned hospital
from the immunity provided governmental agen-
cies in MCL 691.1407; MSA 3.996(107), was con-
vincing to four Justices of this Court in *Parker v*

*Highland Park,* 404 Mich 183; 273 NW2d 413 (1978), and thus has become the law.

Consequently, the only remaining question in this case is whether the 1978 change in the law of governmental immunity effected by *Parker* should be applied retroactively to benefit the instant plaintiffs who claim against the defendants for negligence alleged to have occurred in 1970.

From the Court's affirmative answer to that question, I respectfully dissent and would apply *Parker* in a purely prospective fashion; that is, to causes of action accruing after December 27, 1978, the date of decision in that case.

## I

*Parker* was decided almost six years after the acts and omissions for which the plaintiffs make complaint in these cases. For more than three-quarters of a century before *Parker* was decided, the courts of this state followed the settled rule that the operation of a public hospital was a governmental function and, as a result, such institutions were immune from tort liability. See *Nicholson v Detroit,* 129 Mich 246; 88 NW 695 (1902); *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950); *Schwartz v Detroit,* 83 Mich App 590; 269 NW2d 237 (1978), *rev'd* 405 Mich 839 (1979).[1]

In *Parker,* recognizing that the Court was changing the meaning of "governmental function", as that expression had historically been defined and applied to the operation of public hospitals in this state, Justice FITZGERALD said:

"*In the past* this Court did hold that the operation of

---

[1] *Schwartz* is one of approximately 17 Court of Appeals decisions which were reversed by this Court upon peremptory order, citing *Parker* and giving it retroactive effect without saying so.

a hospital was a governmental function. *Nicholson v Detroit,* 129 Mich 246; 88 NW 695 (1902); *Martinson v Alpena,* 328 Mich 595; 44 NW2d 148 (1950).

"We do not believe that because we *once* held the operation of a hospital to be a governmental function we must do so *today.* A comparison of the reasoning employed by this Court in *Nicholson* with that of *Martinson* shows that the meaning of the term 'governmental function' has varied as the judiciary's thinking on the nature of government has evolved.

"Nor do we believe that the Legislature intended that we must today hold the operation of a hospital to be a governmental function because we did so in 1902 and 1950.

\* \* \*

"*It is time* we recognize that our case-law precedent, as it attempts to distinguish between a governmental and a proprietary function, is 'inherently unsound'." 404 Mich 190-193. (Emphasis added.)

In similar recognition, Justice MOODY, writing separately, said:

"It is held *today* that activity conducted in a general hospital operated by a municipality is not a governmental function for immunity purposes. This conclusion is predicated on the basis that the term 'governmental function' is limited to those activities *sui generis* governmental—of essence to governing." 404 Mich 199. (Emphasis added.)

Thus at the time of the incidents involved in this case, the law was well-settled that the operation of a publicly-owned hospital was a governmental function for which there existed immunity from tort liability. In addition to this Court's adherence to that doctrine for three generations, the Legislature, just three months prior to the acts or omissions complained of in this case, reenacted the statute declaring governmental agencies to be

immune from tort liability when engaged in the exercise and discharge of the governmental function, MCL 691.1407; MSA 3.996(107); a reenactment employing the language of art having the well-settled meanings announced and adopted by this Court in *Nicholson* and *Martinson,* and by the Court of Appeals in *Schwartz, supra.*

In light of that history, the defendant hospital authority was entitled to conclude in 1970, and indeed for the eight years thereafter until *Parker* was decided, that this Court and the Legislature meant what they had said about the immunity of public hospitals. Reliance by appellant, and those similarly situated, upon the immunity doctrine as historically applied was important, not alone as an abstract matter of assuring consistency and predictability in the law of torts and all that implies, but also as a matter of fairness to the taxpayers who own and fund this public hospital authority which was not insured for the liability to which this Court today retroactively exposes it.

In her separate opinion in *Placek v Sterling Heights,* 405 Mich 638, 683; 275 NW2d 511 (1979), Chief Justice COLEMAN persuasively advanced a number of reasons for the purely prospective application of the newborn doctrine of comparative negligence. Her views did not carry the day with a majority of the Justices. I subscribed to them, however, and assign the identical reasons for purely prospective overrulement in this case. A few of those reasons, as I perceive them to be particularly applicable to this case, can be summarized as follows:

—When the Court so clearly and concededly engages in the lawmaking process, the fiction that it is merely giving effect to the preexisting rights of the litigants, which were frustrated by the

overruled law, is especially inapt. A more accurate assessment of judicial lawmaking recognizes that the Court is, instead, making *new* law. Accordingly, it ought to "legislate" with purely prospective effect as our sister branch, the Legislature, does.

—As a practical matter, retroactive application of the *Parker* doctrine will confer a cause of action upon an uncertain number of potential plaintiffs who, in this age of heightened sensitivity to medical malpractice, will unquestionably add a substantial burden to already overcrowded civil trial dockets.

—Perhaps most importantly, in extending the newly announced "Parker doctrine" retroactively to embrace a cause of action which accrued more than nine years ago by a pronouncement which concededly changed the law, the Court once again undermines this state's badly damaged doctrine of stare decisis, of which the rule of purely prospective application is a logical corollary. Retroactive application of new law, especially that effecting significant change, depreciates the ends to which the doctrine of stare decisis is directed: stability, certainty, and fairness. In essence, these ends protect the basic and justified expectation that one may rely upon law as it exists at the time of reliance. By today's action, then, we prove, among other things, that insurers, attorneys, the Legislature, governmental agencies, courts and the public, which will ultimately pay for today's generosity, were unwise to rely upon our statements on the law of governmental immunity and hence should not rely upon our future pronouncements because we may change the law, retroactively, for a period of as much as a decade.

I also note in this regard that at a time when

the cost of health care is soaring beyond the financial capacity of many, even to the extent of a national crisis calling for congressional action, this Court's retroactive ruling imposes upon the taxpayers of this state the obligation to finance the cost of litigation and, in many cases, the jury awards for negligence claims accruing as long as a decade ago. Whether public hospital and medical care institutions had either the foresight or the lack of confidence in this Court to obtain insurance against such liability during the last decade, or whether, as is the case of the defendants at bar, such agencies are uninsured, in the last analysis the cost of the Court's generosity today will ultimately be borne, as indeed it always is, by Michigan's beleaguered taxpayers.

Purely prospective, or "Sunburst",[2] application of *Parker* would be judicial recognition of the case for what it is: judicial legislation thought by a majority of the Justices to be fairer and wiser than the old rule. Prospective application would preserve the integrity of and respect for our doctrine of stare decisis; treat all litigants heretofore concerned with this issue the same, without selective reward or disadvantage; afford public funding authorities the opportunity to prepare for the burden of ever-increasing medical malpractice litigation; and, not unimportantly, acknowledge the validity of the defendant's claim in this case that there is a basic injustice in changing the rules of the game after the final whistle is blown.

I recognize that during the last several months,

---

[2] *Great Northern R Co v Sunburst Oil & Refining Co,* 287 US 358, 365; 53 S Ct 145; 77 L Ed 360 (1932) (Cardozo, J.):

"The common law as administered by [a state's] judges ascribes to the decisions of [its] highest court a power to bind * * * that is unextinguished, for intermediate transactions, by a decision overruling them."

in reliance upon *Parker* and without any majority
statement of retroactive application, this Court
has peremptorily reversed the decision of the
Court of Appeals in some 17 cases[3] in which our
settled law acknowledging immunity was applied
by that Court. We have returned those cases to the
trial courts for consideration in the light of *Par-
ker*. To have done so in those cases was error,
since *Parker* made no statement as to its applica-
tion, forward or backward. I decline to compound
that error, however, by opting for retroactive ap-
plication of the new doctrine because I believe
such application to be unjust.

For the foregoing reasons I would affirm the
decision of the Court of Appeals in these cases and
declare the rule announced in *Parker, supra,* to be
applicable to causes of action accruing on or after
December 27, 1978, the date of decision in that
case.

COLEMAN, C.J., concurred with RYAN, J.

[3] *Snow v Freeman,* 405 Mich 837; *Schwartz v Detroit,* 405 Mich 839;
*Jackson v Sturgis,* 405 Mich 839; *Tauber v Highland Park General
Hospital,* 405 Mich 840; *Colby v Wayne County General Hospital,* 405
Mich 840; *Thorpe v Wayne County General Hospital,* 406 Mich 855;
*Poulos v Outer Drive Hospital,* 406 Mich 855; *Martin v River Dist
Community Hospital Authority,* 406 Mich 856; *Mieksztyn v Sarragh,*
406 Mich 856; *Decker v Outer Drive Hospital,* 406 Mich 857; *Robb v
Pontiac General Hospital,* 406 Mich 858; *Brown v Detroit,* 406 Mich
859; *Ricca v Hug,* 406 Mich 860; *Raines v City of Flint,* 406 Mich 865;
*Thomas v Wyandotte General Hospital,* 406 Mich 865; *Montie v
Wayne County General Hospital,* 406 Mich 867; *Warfield v Wyan-
dotte,* 406 Mich 904.